Gaston, J.
 

 The trespass, of which the plaintiff complained, was the putting of a fish trap in a sluice of Deep River, and the erection of a dam contiguous to the trap and extending from the south bank of the river
 
 to
 
 a rock on the north side of the sluice. The river was not navigable, and the rock and sluice were on the south side of the middle or channel of the river. Both plaintiff and defendant setup title to the
 
 locus in
 
 quo, under conveyances from the same proprietor. The first conveyance was made to Boy]an, under whom the plaintiff claimed, and it covered a tract of land on the north side of the river, the bed of the river where the alleged tresspass was committed, (in express terms,) and also a half an acre oflandonthe south side of the river. The conveyance to Mrs. Ramsay, under which the defendant claimed, was for a tract of land on the south side of the river, which was described as beginning at a tree • on the river bank above the
 
 locus in quo,
 
 running south therefrom, and, after various courses north, to the river, be
 
 *539
 
 low the place where the alleged ti’espass was committed) then up the river to the first station, excepting thereout the half acre previously conveyed to Boylan. For sixteen years in succession after this conveyance to Mrs. Ramsay, those claiming under her had every year erected or repaired and used fish traps in this sluice, and kept up dams across it at and near this spot, for the purpose of catching fish, while no actual occupation on the part of the plaintiff, or those under whom he claimed, was shewn during that time, of the sluice, rocks, shoals or bed of the river between the channel and the south bank of the river. The half acre on the south side was indeed used by them as a ferry landing, but this half acre did not include the
 
 locus in quo.
 

 Upon these facts his Honor- charged the jury that the place where the tresspass was committed was included within both the conveyances — that the conveyance to Boylan being the elder, it passed the title to the plaintiff — that a possession for seven years under the conveyance to Mrs. Ramsay would extinguisd the elder title and give a title to the defendant — and that the continued acts of keeping up fish traps and dams, if the place could not, in its natural state, be cultivated, did amount to an actual possession thereof. Under these instructions, the jury found a verdict for the defendant, and a judgment being rendered accordingly, the plaintiff appealed.
 

 With every part of the instructions we are entirely satisfied. There cannot be stated a better settled rule of the common law than that a grant of land, bounded in terms by a river or creek
 
 not navigable,
 
 carries the land to the grantee
 
 usque ad )ilum aquce,
 
 to the middle or thread of the stream-This rule of law has been recognised in every state of the union, with whose judicial decisions we are acquainted.— In some of the States, the common law criterion for distinguishing between rivers navigable and rivers not navigable, whether the tide ebbs and flows therein or not, has been rejected as unsuited to their geographical condition; but in all, we believe, the construction of a grant co-terminous with a river, held to be not navigable, is uniform — that in law it covers the bed of the river to the thread or middle of the stream.
 
 *540
 
 Certainly this has been regarded as undoubted law in our
 
 Wilson
 
 v. Forbes, 2 Dev. 30.
 
 Ingram
 
 v.
 
 Thread
 
 gill, 3 Df 59.
 
 Pugh
 
 v.
 
 Wheeler,
 
 2 Dev. & Bat. 50. The therefore, to Mrs. Ramsay included the bed of the river on the south side of the main stream.
 

 The exception in the deed of the half-acre on the south side of the river, previously conveyed to Boylan, does not affect the
 
 construction
 
 of the deed. This half acre is, by the exception, simply taken out of the land included within the description; and being so taken out, all the residue of the land, coming within the legal effect of that description, is conveyed by the deed. The description is
 
 single.
 
 It makes no reference to the boundaries of the interfering tract conveyed to Boylan.
 

 The case, then, is one of a senior and junior deed interfering in part with each other — or, in common parlance, lapping upon each other. The law in that case is undoubtedly as his Honor stated it — that if neither of the parties, contending under these deeds, has hadan actual
 
 pedispositio
 
 on the part comprised within both deeds, but each grantee is settled on that part which is claimed only by hims.elf, the law adjudges the possession of the lap, or part included within both deeds, in him who has the elder deed or better right — but if either be actually settled on the part included within both deeds, the law adjudges him to be in the exclusive possession thereof. Possession of land is denoted by the exercise of acts of dominion over it, in making the ordinary use, and taking the ordinary profits, of which it is susceptible in its present state. — . such acts to be so repeated, as to shew that they are done in the character of owner, and not of an occasional trespasser. We agree with his Honor in holding that the acts of dominion, continuously exercised over this Sluice by keeping up fish traps therein, erecting and repairing dams across it, and using it every year during the entire fishing season for the purpose of catching fish, did constitute an unequivocal possession thereof. The judgment must be affirmed.
 

 Per Curiam, Judgment affirmed.