Ruffin, C. J.
 

 As the paper titles of Miss Hines and the defendant both covered the
 
 locus in quo,
 
 and that of the former was the better title, the possession of the disputed land was constructively in her, unless the acts of Ellis and the defendant amounted to actual possession of the
 
 locus in
 
 quo; in which case Miss Hines must be deemed to have been ousted of her possession of that part of the land covered by both conveyances.
 
 Carson
 
 v Burnell, 1 Dev. & Bat. 546. This brings up the question, whether* the making of turpentine, without a residence on the land, or the enclosing and cultivating a part of it in crops of grain or the like, constitutes possession actual and adverse, so as to amount to a dispossession of the true owner. The question, though not brought directly into judgment in this Court hitherto, is not entirely new, having several times occurred incidentally and been often thought of by the profession. We are all of the same opinion on it with his Honor. That opinion was intimated in
 
 Green
 
 v
 
 Harman,
 
 4 Dev. 158; and was almost necessarily implied in what was said in
 
 Carr
 
 v
 
 Carr,
 
 4 Dev. & Bat. 179. The evidence in this case shews, and every one acquainted with the operation must be sensi-
 
 *314
 
 Me, that there can hardly be a more positive, direct or open exercise continued dominion over land, than the making of turpentine from year to year. It occupies the whole time o£ engag6(j jn ft for more than the half of every year, and, as yielding a regular annual crop, the cultivation of the trees is a steady employment, through a series of years. Nothing can be more striking to the observation than the trees which are tended for turpentine ; being chipped as high as a man can reach with a round shave, as it is called, on a long handle, and thus becoming whitened by the hard turpentine for half their circumference and to the height of twelve or fifteen feet. They cannot fail to attract the attention of those who come in view of them, and therefore give to this operation, as an act of ownership, as much notoriety, as perhaps any thing else can, unless it may be the actual residence of the party. And from the nature of the business and the period requisite for its prosecution, it may not only be seen, that the trees are tended, but the owner of the land has every requisite opportunity of discovering the person who tends them. In its nature it is not a clandestine, but an overt act of ownership; not made up of.distinct trespasses, but amounting to occupation.
 

 But it was argued, that, although it may be true, that the making of turpentine constitutes possession, when carried on to a considerable extent and with certainty visible to the owner, yet that, here, the trees were too few and the place too much out of the way to authorize a fair inference, that the owner knew thereof; and, therefore, that her possession cannot b.e held to have been terminated. We admit there may be cases, in which the possession may be of so minute a part of the disputed land, as not to amount to an ouster of the owner: being regarded, rather, as an inadvertent encroachment without a claim of right, or as permissive and not adverse. But in such cases the conclusion does not arise from the supposition, that the owner was actually ignorant of the fact of the possession or of its extent, but, as Avas mentioned ha
 
 Green
 
 v
 
 Harman,
 
 that the other party did not intend to
 
 *315
 
 usurp a possession beyond the boundaries, to which he had a good title. In holding that making turpentine constitutes possession, we necessarily hold, that it is an occupation, which by its nature is sufficiently notorious, to afford notice to an owner of ordinary attention to his affairs. If, therefore, the extent of the wrong-doer’s possession be so limited — for example, here, the number of trees so few — as to afford a fair presumption, that the party mistook his boundaries, or did not intend to set up a claim within the deed of the other party; it would be a proper ground for saying, that he had not the possession or that it was not adverse. But in the case before us there can be no doubt, that the defendant did intend to take possession and to assert a title to the extent of his own deed. Those who went before him actually tended the trees six years before his purchase. It does not appear that they or he knew that Miss Hines had a title to the land; and, as soon as he purchased, he commenced that use of the land, from which he would derive the most profit. His purpose, therefore, was to enter into and claim the whole, as must be assumed upon the same principle, on which the Courts hold, that a possession of a part of ihe land disputed is the possession of the whole of it. We do not say, if a person designs and by contrivance is able to conceal from the owner this occupation of a minute parcel, for the purpose of defeating the better title by a clandestine occupation, that it might not make a case of fraud, which should not be allowed to succeed. But, if it be so, the intent must be found by the jury; and no such point was made to the jury upon this trial. This case is, that every tree on the land, that was fit for the purpose, was boxed and tended for a crop of turpentine six or seven years, by those, who had deeds which covered the land, and who claimed it under those deeds, and had no notice of an adverse claim, until near the seventh year of their possession. They went as far as they could in taking possession, unless by living on the land or enclosing it for a grain crop.
 

 
 *316
 
 It was further contended that the entry of Mr. Hines re-ves<'e(^ the possession of his daughter, so as to enable her to bring trespass, or
 
 to
 
 convey
 
 to the pláintiff, so that he could
 
 gue> jt js not dotted that the entry of the owner upon a trespasser will enable the former to maintain trespass. But it is not merely going on the land in the possession of another, that will have that effect. It must be an entry for the purpose of taking possession, which may be evinced by acts of ownership on the land, as ploughing it, or the like,
 
 Butcher
 
 v
 
 Butcher, 7
 
 Barn. & Cress. 399, or by a formal declaration of the intention accompanying the entry. 2 Blac. Com. 312. 3 Blac. Com. 176. It might, perhaps, be questioned, whether Mr. Hines’ entry was of that character, as he merely warned the defendant, that, if he continued there, he would be sued; which might have been in ejectment perhaps, and not in trespass. But admit that Miss Hines might have brought trespass, or that her deed, if it had been made on the land, would have been operative, Carson v
 
 Burnett,
 
 1 Dev. & Bat. 554, yet it does not follow, that this deed, not executed on the land, is valid, and, therefore, that the plaintiff can have this action. We have already said, that we hold the defendant to have been in possession, when Mr. Hines went on the land. The jury have found, that the defendant did not abandon that possession, but continued there, while Hines was there and after he went away, tending the trees, as before, through that season. That was, of course, until and after the execution of the deed to the plaintiff, which was on the first day of September, 1840. At the date of the deed, therefore, the defendant had the same possession he had all along had; which was adverse to Miss Hines and prevented her from assigning her right of entry. His Honor stated to the jury, that such would be the law, even if they should think the defendant was not in person on the laud, at the particular juncture of the execution of the deed. That was going further than was necessary in the case, since it was for the plaintiff to shew, that there was the
 
 hiatus
 
 in the defendant’s possession, which both
 
 *317
 
 pre-existed and followed, the execution of the deed, and he gave no evidence on the point. Therefore, if there were er- °
 
 r 3
 
 ror
 
 in
 
 that respect, it ought not to prejudice the defendant. But we concur in the opinion as expressed. For the possessor of a house or field does not lose his possession by merely going out of them, without any intention of abandonment, but
 
 animo reveriendi
 
 — no other person entering into possession with a claim to hold it.
 

 The Court therefore approves the instructions to the jury and affirms the judgment.
 

 Per Cuejam, Judgment affirmed.