Battle, J.
 

 Upon tbe trial, three objections were taken against tbe right of the plaintiff to recover, of which two only have been urged by tbe defendant’s counsel in tbe argument here. The proposition, that because the defendant, and those under whom he claimed, had been in possession for more than thirty years of the adjoining tracts of land, they thereby had possession of the tract in question, inasmuch as all the
 
 *409
 
 tracts, though separate and separately described, had been conveyed by one deed, has been properly given up. It cannot be supported upon principle, and is directly opposed by the authority of the case of Carson v. Burnett, 1 Dev. and Bat. 546.
 

 The objection to the title of the Trustees of the University, under whose demise the verdict for the plaintiff was taken, is founded upon an alleged error in the Court, in leaving the question of escheat to the jury, as one of fact, instead of deciding it as one of law. But, by looking at the charge, in connection with the evidence, it will be seen that no such error as is supposed was committed.” The testimony of an aged witness was, that Thomas Box, the grantee of the land under whom the Trustees claimed,
 
 “
 
 had left the State about the period of the Revolution, and had never since been heard of; that he had no relations, and that no person had ever come forward, claiming to be his heir.” Surely, this was testimony proper to be submitted to the jury, upon the question whether the said Box had died without heirs, and the jury were instructed that, if they found in the affirmative, then his land had escheated to the Trustees of the University. There was no question of heirship, such as wheth-' er certain persons were not the heirs at law of Thomas Box, the grantee, to make it a question of law for the Court, and thus bring it within the principle of BRADFORD v. Erwin, 12 Ired. 291. The charge was, in effect, that, if the jury should find that Thomas Box had died, leaving po relations, then he died without heirs, and his lands escheated to the Trustees of the University, and to it, as thus understood, no just exception can be taken.
 

 The last objection to the plaintiff’s recovery, is the one mainly relied on, and has been argued with zeal and ability by the counsel on both sides. It is, that, supposing the plaintiff’s lessor had once had title, the defendant’s ancestor, John Cobb, had gained it from them by an adverse possession for more than seven years, under color of title; for that, cutting the timber off the land, and having it sawed at his mill, and feeding his hogs upon the land, constituted such possession as the Statute ofLim-
 
 *410
 
 Rations requires. Tbe question raised by the objection then is, whether the acts specified, continued for seven years, are sufficient, as a possession, to make good a defective title. This question we do not consider an open one: the principle having, as we conceive, been definitively settled by repeated adjudications of our Courts against the defendant. The first case, in which it was discussed and decided, was Andrews v. Mulford, 1 Hay. Rep. 311. Where the Court say that a person relying upon a possession under the Statute, “ must take possession with such circumstances, as are capable in their nature of notifying mankind, that he is upon the land claiming it as his own — as in person, or by his tenantand they held that a claimant did not acquire possession by putting his cattle upon the land to range upon it. “.Cattle maybe a longtime ranging upon land, without its being publicly known whose they are, or that they were put upon the land by a third owner, or that he meant to claim it; but if a man settle upon the land by himself or tenants, and continues that possession, builds a house, or clears the land and cultivates it, his claim then becomes notorious, and gives fair notice to the adverse claimant to look to his title.” The same principle is clearly stated by the Court in Grant v. Winborne, 2 Hayw. Rep. 56. “ The law has fixed the term of seven years, both for the benefit of the prior patentee and the settler, that the latter might not be disturbed after that time; and that, in that time, the prior patentee might obtain notice of the adverse claim, and assert his own rights. Hence arises the necessity that the possession should be notorious and public, and in order to make it so, that the adverse claimant should either possess it in person, or by his slaves, servants or tenants, for feeding of cattle or hogs, or building hog-pens, or cutting wood from off the land, may be done so secretly as that the neighborhood may not take notice of it; and if they should, such facts do not prove an adverse claim, as all these are but acts of trespass. Whereas, when a settlement is made upon the land, houses erected, lands cleared and cultivated, and the party continues openly in possession, such acts admit of no other construction than this,
 
 *411
 
 that the possessor means to claim the land as his own: in order to make this notorious in the country, he must also continue in the possession for seven years ; occasional entries upon the land will not servo, for they may be eicher not observed, or, if observed, may not be considered as the assertion of rights; and, from this view of the subject, arises the following definition of a possession which is calculated to give a title: “A possession, under color of title, taken by a man himself, his servants, slaves or tenants, and by him or them continued for seven years together.’'
 

 In Green v. Harman, 4 Dev. Rep. 158, it was held, that the overflowing of land, by stopping a stream below, was not a possession which would perfsct a defective paper title, nor would the cutting of timber trees upon the land have that effect. In discussing the latter question, the Court say, “thatit is not entirely clear of difficulty. There is much land in the State, of. which nearly the whole value consists in the timber, its fertility not being sufficient to induce a prudent proprietor to erect habitations or clear a plantation on it. In such cases, the timber is frequently all taken off, and it would not seem easy to give more positive evidence of asserted ownership and of enjoyment. On the other hand, any rule that could be laid down would be so wanting in precision as to the extent to which the trespasses should be carried to constitute an ouster, as to leave the whole subject in uncertainty. It is safest to require an actual occupation, such as residence or cultivation; something to make it emphatically the party’s close, which is in conformity to the ancient rule of the common law, and also to the application of it to our situation, as early made in this State, in the cases of Andrews v. Mulford, and Grant v. Winborne.” The Court then go on to intimate that the making of turpentine, as practised in the Eastern part of the State, would be a sufficient possession, as being an operation partaking of the nature of cultivation.
 
 u
 
 It cannot be pursued secretly, and does not consist of single acts of trespass, like cutting down trees and carrying them away; but requires a continued attendance on the land for a considerable portion of the year, and from to as. the
 
 *412
 
 same trees are worked for several years in succession.’' This intimation was carried out into a direct decision in the case of Bynum v. Carter, 4 Ired. Rep. 310. The principle established by these adjudications and some others, (see Burton v. Carruth, 1 Dev. and Bat. 2, and Gilchrist v. McLaughlin, 7 Ired. 310,) is still further strengthened by the cases to which we shall now advert, which
 
 are, from
 
 necessity, exceptions
 
 to it.
 
 In Simpson v. Blount, 3 Dev. 34, and Tredwell v. Reddick, 1 Ired. Rep. 56, it was decided that cutting timber and making shingles in a swamp unfit for cultivation, continuously for seven years, is a good possession under the statute. “ It is exercising that dominion over the thing, and taking that use and profit, which it is capable of yielding
 
 in its present state.
 
 It is all that can be done, until the subject shall be changed. It is like the case stated in the books, of cutting rushes from a marsh.' This is sufficient, though it might appear that dykes and banks would make the marsh arable.” Again ; it was held in Williams v. Buchanan, 1 Ired. 535, that, as to a stream not navigable,' keeping up fish traps therein, erecting and repairing dams across it, and using it every year, during the entire fishing season, for the purpose of catching fish, constitute an unequivocal possession thereof. “ Possession of land is denoted by the exercise of acts of dominion over it, in making the ordinary use, and taking the ordinary profits of which it is susceptible in its present state, such acts to be so repeated as to show that they are done in the character of owner, and not of occasional trespasser.”
 

 If we test the case before us, by applying to it the principle thus clearly settled by a series of decisions, running through a period of many years, we shall find that the defendant’s claim of title, arising from possession, cannot be sustained. The land is not swamp land, but good turpentine land, having a great number of pine trees upon it, fit for making turpentine. Th# feeding of hogs upon it, and cutting of timber trees from it, was not making the ordinary use, and taking the ordinary profit, of' which it was susceptible in its present state, and did not.
 
 *413
 
 therefore, show that the acts were done in the character of owner, and not of an occasional trespasser. The judgment must be affirmed.
 

 Judgment affirmed.