A. J. HAMILTON v. J. P. ICARD et al.

*Action to Recover Land—Evidence—Adverse Possession—Color of Title—Grant—Lappage—Interruption of Possession by Grant of State—Statute of Limitations.*

1. Though it is not necessary to show continuous and unceasing possession of land for the statutory period of twenty-one years in order to raise a presumption of a grant from the State, but only that in the aggregate the actual possession has extended over such period, yet, where written evidence of title is offered as color merely, the possession must be manifested by unequivocal acts of ownership such as would have subjected the occupant not simply to an action of trespass *quare clausum fregit*, but to a possessory action at common law.

2. Though one has color of title to land he acquires title by adverse possession to none by planting some part of it in tobacco every year for more than the statutory period, no part being planted for more than two years, and each part being inclosed only for the time it is cultivated.

3. Though plaintiff in an action for land fails to show a grant from the State, or adverse possession for sufficient time to bar the State, he may avail himself of the subsequent introduction by defendant of a patent to prove adverse possession for such period as will bar defendant.

4. The constructive possession of one claiming under color of title for twenty-one years—the period necessary to give title against the State (*The Code*, §139, subd. 2)—is not interrupted by the mere issuance to another of a patent including part of the land claimed by him where his actual possession is within the lappage.

5. Under *The Code*, §141, providing that no action shall be had against one who has been in possession of land, under color of title, for seven years, by one having right or title thereto, except during the seven years next after his right or title shall have descended or accrued, the statute begins to run against one to whom a grant of the land has been made only from the time of the grant.

CIVIL ACTION, tried before *Boykin, J.*, and a jury, at January Special Term, 1894, of CALDWELL Superior Court.

The plaintiff introduced deeds to him and those under whom he claimed running back to 1869 and embracing the *locus*. Among those under whom he claimed were one Barringer and one Barrier.

I. N. Beard testified: "I am County Surveyor. I have surveyed the land conveyed in the above deed; the land granted to the defendants is embraced in the 425-acre tract conveyed to Hamilton, save 7½ acres; the defendants' grant is for 152 acres; I surveyed it; I saw signs of plant beds on the 425-acre tract; the defendant May directed me to run the line of the grant so as to exclude the plant beds; he said he wanted to keep off any one's possessions, and he went ahead and when he saw a bed he would turn me aside. The 425 acres were all forest land, except an old clearing around the shoals; the clearing had not been cultivated; the timber cut on it was decayed; there were no signs of a fence. Tobacco beds are where the seed are sown to make plants."

Witnesses testified for the plaintiff that the land was very well adapted to the growing of tobacco, and that they had seen tobacco plants growing in beds in the forests. I. T. A. Spencer testified that in 1870 he burned a tobacco bed on the land with the permission of Barringer, and from 1871–'75 he used the same bed with the permission of Barrier. He said: "The stock law was adopted two years ago; the beds were fenced before that. I quit raising tobacco ten or twelve years ago. Then I burned beds ten years in succession by Barrier's consent. In 1870 I burned a bed 20 x 20 feet. I put a rail and pole fence around it. In 1871 I burnt about same place, taking in some new land and leaving off some of the old bed. I saved the rails each year for the next. Each year I'd take the edges of the old bed and burn new land. Perhaps I'd keep half the old bed. In 1873 I burnt a large bed; think I was on

new land entirely then. In 1874 used same bed. In 1875 burnt a new one. I burnt by permission of Barringer two years; the other years by permission of Barrier. Don't know that any one of the beds was on the land granted to defendants. Tobacco beds are usually 10 or 15 by 10 or 15 feet."

W. F. Deal testified: "I have seen tobacco beds on the 425 acres; I remember one year, 1871, distinctly; Spencer had charge of the land; I don't know whose land it was. After 1871 Spencer gave me permission to burn a bed there one year; can't tell what year it was. I don't know whose beds they were. The bed I saw there in 1871 was in a swamp. I think it was fifty or sixty square rods. There were logs and poles around it and it was covered with brush. It appeared that the logs and poles were put there to keep the brush from falling away from the bed. I burnt my bed one-half a mile from the bed I saw in 1871; part was on an old bed, part was on new land. A great many people burnt beds on the 425-acre tract; quite a large place was taken up thus. It is fine tobacco land; there are the finest shoals in the county there. There has been no cultivation of any part of the land. Hamilton worked there two or three weeks. There is the finest body of timber on it in our county. The land is peculiarly adapted to growing tobacco plants. Spencer gave me permission to burn my bed."

B. M. Satterthwaite testified: "I have known the boundary since 1872; I burnt my bed there that year by permission of Barringer. The bed was 10 x 15 yards; it was a new place. I fenced the bed to protect it from stock. I burnt the land, grubbed it, then sowed the seed. Got the wood to burn it from this land. There have been beds burnt on it every year since. My father has burned beds on it every year since save 1880 and 1881, when he burnt on my

land. Sear, Teague, Spencer and Pressly have burnt beds on it every year since 1871. Father burnt there by permission of Barringer and Barrier. Father and I burnt beds there till 1877, then I burned on my own land. We burnt our beds on the same places all the time. We had two beds. We sowed seed in February and took up the plants in May. It is good corn and wheat land. Tom Eaton put Mrs. Beach there twelve years ago; he built a house for her and planted two or three acres in wheat. She only remained there two years. There is a little house on defendant's grant; I saw it there about a year ago. The fence remained around our bed during the year until we got ready to burn again; then it was taken down and after the burning was replaced."

There was other testimony by other witnesses to the same effect, and also that plaintiff had paid taxes on the land since he got his deed.

Defendants introduced a grant from the State to Morgan May, C. S. Hinkle and Julius Icard, dated 20th September, 1892.

The land granted is embraced in the deed to plaintiff.

There was testimony on part of the defendants that there were no burnt beds, etc., on the grant.

The defendants requested the Court to instruct the jury that the plaintiff's possession was not of such character as to perfect his defective title. The Court intimated that the jury would be so instructed. The plaintiff submitted to a nonsuit in deference to this opinion of the Court and appealed.

*Messrs. Edmund Jones* and *M. Silver*, for plaintiff (appellant).

No counsel *contra*.

AVERY, J.: The action was brought on the 30th of November, 1892. The plaintiff proposed to show title under a Sheriff's deed for 2,425 acres, executed May 22, 1869, and several mesne conveyances, for a tract containing 425 acres, included within the boundaries of the older deed. Plaintiff introduced no grant from the State, but defendant offered a patent for 152 acres bearing date September 21, 1892, which it was admitted embraced the whole of the *locus in quo.*

In order to raise a presumption of a grant from the State it is not necessary to show continuous and unceasing possession. *Reed* v. *Earnhardt*, 10 Ired., 516. A break of two or three years in the chain of possession on a failure to show the connection between successive occupants is not a fatal defect in the proof where in the aggregate the actual possession has extended over the statutory period. *Mallett* v. *Simpson*, 94 N. C., 37; *Cowles* v. *Hall*, 90 N. C., 330; *Candler* v. *Lunsford*, 4 Dev. & Bat., 407; *Davis* v. *McArthur*, 78 N. C., 357; *Bryan* v. *Spivey*, 109 N. C., 66. But where, as in the case at bar, written evidence of title is offered as color merely, the possession must be manifested by unequivocal acts of ownership, such as would have subjected the occupant not simply to an action of trespass *quare clausum fregit*, but to a possessory action at common law. *Gudger* v. *Hensley*, 82 N. C., 482; *Logan* v. *Fitzgerald*, 87 N. C., 308; *Osborne* v. *Johnson*, 65 N. C., 22; *Williams* v. *Wallace*, 78 N. C., 354; *Bartlett* v. *Simmons*, 4 Jones, 295 "The possession will not divest a superior title to any part outside the actual occupancy" (said the Court in *Scott* v. *Elkin*, 83 N. C., 427) "for the reason that no action could be maintained by the true owner, and a constructive possession, not exposing one to an action, does not take away or impair an uninvaded legal right." *Ruffin* v. *Overby*, 105 N. C., p. 78. Occasional entries upon different parts or even upon the

same portion of the land for the purpose of cutting timber may subject the trespasser to several actions for damage (3 Blk., 212), but are not considered as assertions of right in the land. *Ruffin* v. *Overby, supra; McLean* v. *Smith*, 106 N. C., 179.

Applying the principles we have stated to the facts of this case, we are of opinion that the planting of tobacco beds in different places not upon the same spot for more than two successive years, though continued for the statutory period, would not constitute an actual possession such as would mature title, since the occupancy does not divest title beyond its actual bounds (*Scott* v. *Elkins, supra*) and is therefore not continuous as to any one spot. If as to any particular portion of territory it is a continuous, open, notorious and unequivocal assertion of right, the law extends the benefit of such a possession of a spot, however small, by raising the presumption that it was held in the assertion of a claim to the limits of the occupant's paper title. *Ruffin* v. *Overby*, 88 N. C., 369; *McLean* v. *Smith, supra*. The evidence of the witness Spencer does not show such a continuous occupancy of any particular portion of the land for more than two years. *Morris* v. *Hayes*, 2 Jones, 93; *Williams* v. *Wallace*, 78 N. C., 354; *Loftin* v. *Cobb*, 1 Jones, 406; *Bastlett* v. *Simmons*, 4 Jones, 295. He sometimes used a part of an old tobacco bed a second year, but not oftener, before removing the rails entirely off it and ceasing to inclose it at all. The witness Preswell testified, however, that between 1879 and 1885 (before the latter year) his father cleared a portion of the land, as the lessee of the plaintiff, and inclosed it. Taking the testimony of that witness with that of Palmer and Deal, the jury might have been warranted in finding that the land was kept inclosed and either cultivated or used as a pasture for more than seven years before the action was brought, on the 30th of November, 1892.

Where a claimant subjects the land to some use of which it is susceptible in its present state and at such intervals as to indicate unmistakably that he means to be considered as claiming the ownership and not to commit an occasional trespass simply, such occupancy is sufficient (*Williams* v. *Buchanan*, 1 Ired., 535; *Bynum* v. *Collin*, 4 Ired., 310), and especially if he subjects it to the only use of which it is susceptible. *Tredwell* v. *Riddick*, 1 Ired., 56. Where land is used for agricultural purposes it is not essential that the claimant should cultivate it constantly, but only in accordance with usages prevailing among husbandmen. It is not material whether a field is cultivated in grain or corn, or is kept inclosed for a pasture when needed, so that it be used every year in the ordinary way for some purpose connected with the business of tilling the soil. But there was no testimony tending to show a continued occupancy for twenty-one years, such as would mature title as against the claim of the State.

The statute (*The Code*, §139) provides that the State "will not sue any person for or in respect to any real property or the issues or profits thereof by reason of the right or title of the State to the same * * * when the person in possession or those under whom he claims have been in possession under colorable title for twenty-one years, such possession having been ascertained and identified under known and visible lines and boundaries." Upon the principle that the plaintiff in an action for possession must show title good against the world, including the State under whom all lands are held, it has become a settled rule that where no grant is introduced the burden of proof cannot be shifted to the defendant in such actions without *prima facie* proof of possession under colorable title for twenty-one years. But where either party exhibits a patent to the land in dispute, since the State can no longer assert

any claim, it is familiar learning that either the grantee or
the party claiming adversely to it after its introduction
may, as a general rule, use it to show that the State is no
longer a claimant and make good his own claim by proof
of possession under colorable title for seven years only.
*Gilchrist* v. *Middleton,* 107 N. C., 680.  And even where
the plaintiff fails to make *prima facie* proof of title because
he is unable to produce a grant from the State or prove
possession for a sufficient number of years to bar the State,
" he is not precluded from taking advantage" of the sub-
sequent introduction by the defendant of a patent covering
the *locus in quo. Gilchrist* v. *Middleton, supra; Boomer* v.
*Gibbs,* at this Term.

But where it is conceded that the defendant's grant
dated the 20th September, 1892, for 152 acres embraces the
land in dispute and precludes the State from any claim of
title it may be contended, upon the authority of *Brown* v.
*Potter,* Busbee, 461, that the possession of the plaintiff was
interrupted upon its issuance and that the statute did not
run thereafter.  The head-note of that case justifies the
contention, but upon examination into the facts it is shown
to be manifestly misleading.  The question raised there
was whether the issuance of a grant lapping over the visi-
ble boundaries to which an adversary claimed under an
actual *possessio pedis* without any written evidence of title
whatever, and including no part of the land occupied when
it was issued, would draw to it the constructive possession
which, in the absence of adverse occupancy, is always
incident to the better right.  The Court said (page 463):
"The case in that aspect presented at the trial the ordinary
one of the lappage of two grants, neither party being in
the actual possession of the lappage.  The title to the *locus
in quo* at the time the action was brought was in the lessors
of the plaintiff and drew to it the possession, which posses-

sion was not disturbed until the taking of the possession of the small portion mentioned in the case." In a previous paragraph of the opinion stress seemed to be laid upon the fact that no color of title had been shown by the defendant and, in a subsequent paragraph, that up to 1834 he (Potter, the father of the defendants, and under whom they claimed) had acquired no title, and after that time his possession ripened his title only to that portion of the land within his boundaries not covered by the grant to Brown."

The Court say that the doctrine announced was "fully recognized and established by the case of *Carson* v. *Mills,* 1 Dev. & Bat., 546." The Court then stated the principle decided in the last named case, as follows : "It is there determined if a part of a tract of land be covered by two titles and he who has the better title be in possession of another part of it he has in law the possession of the whole, unless the person holding under the other title has the actual possession of the interference." That was, therefore, the case of a lappage where, because neither party was seated in the interference, the law gave the constructive possession to the holder of the better title. The only authority cited besides *Carson* v. *Mills* was *Smith* v. *Bryan*, Busbee, 183, where the same point was decided, but the reasons more clearly set forth. It is evident that the Court intended to distinguish a case where the contesting occupant was claiming under color of title from that before them a *possessio pedis* without proper title, since they said, *arguendo*, "These grants overlapped, and the case states that neither party was in the actual possession." Quoting from *Bynum* v. *Thompson*, 3 Ired., 578, it was said further " that where one enters on land without any conveyance or other thing to show what he does claim, how can the possession by any implication or presumption be extended beyond the occupation *de facto ?* To allow him to say he

claims to certain boundaries beyond his occupation, and by construction to hold his possession to be commensurate with his claim, would be to hold the ouster of the owner without giving him an action therefor." The point decided in *Bynum* v. *Thompson* was that where one enters under a deed he is presumed to claim to the boundaries of his conveyance; when he occupies without deed, only to the extent of his *possessio pedis*. The opinion in *Brown* v. *Potter*, therefore, is not susceptible of the interpretation that the possession of an occupant claiming under colorable title by virtue of possession for twenty-one years is necessarily interrupted *ipso facto* upon the issuance of a grant lapping upon the boundary of such occupant, where it does not appear that there was an entry and counter-possession of the interferance under the grant. ·Upon the execution of the patent the benefit of a possession without paper title is confined to the actual *possessio pedis*, but occupation of the interference by those claiming under a grant is necessary in order to limit the constructive possession of one who is seated on the lappage and claims under color of title for twenty-one years.

In ascertaining whether the plaintiff had acquired title by possession under color for twenty-one years the time that elapsed between the issuing of the grant and the entry of the defendants upon the lappage might have been counted in order to make up the full period under a fair construction of section 139 (2). If such intervening time had been sufficient with the previous occupancy the grantee could not complain if the effect of the grant was to place him in the shoes of the State with the right possessed by the State to stop the running of the statute, by entry or action, before the end of the twenty-one years. But as the testimony restricts the plaintiff to the claim by virtue of colorable title for seven years under section 141 of *The Code*

a very different question is presented. That section provides that "no entry shall be made or action sustained against such possession except during seven years after his right shall have descended or accrued." The right of the defendants did not accrue till the grant was issued, and therefore the seven years' statute (section 141) did not begin to run as against their right till the 20th of September, 1892.

We cannot lay down the rule as applicable in all cases that the issuing of a patent covering a tract of land which does not appear to have been theretofore granted deprives an occupant on the land of the benefit of his previous adverse holding. Where an occupant is seated on the interference when the overlapping grant is issued, and is claiming colorable title adversely to the State under section 139 (2), the statute still continues to run in his favor as to the whole lappage unless the grantee, or those claiming under him, enter upon and occupy some portion of the lappage or bring an action. *Boomer* v. *Gibbs, supra.* If, on the contrary, the occupant of the lappage wishes to use his adversary's grant to show that the title is out of the State in order to establish it in himself, he must prove an adverse occupation for seven years after the grantee's right of action accrued on receiving his grant.

There was no error in the intimation of the Court that the plaintiff was not in any view of the testimony entitled to recover, and the judgment of nonsuit is

Affirmed.