FRANCIS S. COXE ET AL., TRUSTEES AND EXECUTORS, v. K. J.
CARPENTER ET AL.

(Filed 3 December, 1911.)

**Adverse Possession—Title—Evidence.**

. The defendant having shown, in deraigning his title, a grant
from the State to him of the *locus in quo*, the plaintiff introduced
evidence tending to show that the land was unfit for cultivation
and that for more than twenty years next before the commence-
ment of the action his tenants had continuously used it for "tim-
ber, wood, pine," and that they "would cut wood there nearly
every day," that being the only purpose for which it was avail-
able; that the plaintiff had cut roads through the lands which his
tenants had used, as well as other roads theretofore cut; that
plaintiff was using it for its timber and for the purpose of subse-
quently getting a water supply therefrom: *Held*, evidence of
adverse possession sufficient to ripen defendant's title, for the
determination of the jury. *Berry v. McPherson,* 153 N. C., 4, cited
and applied.

APPEAL by defendants from *Councill, J.,* at April Term,
1911, of POLK.

The facts are sufficiently stated in the opinion of the Court
by *Mr. Justice Walker.*

This was an action of trespass *quare clausum fregit.* The
plaintiffs relied upon color of title and adverse possession. The
defendants introduced a grant from the State, which covers the
*locus in quo,* but did not connect themselves with it, so that it
had the effect only of showing that the title was out of the State.
There was evidence tending to show that the plaintiffs and those
under whom they claim had been in the actual possession of the
land for more than thirty years, claiming it as their own. The
witness John Pack testified that he had lived on the Coxe plan-
tation a little over twenty years, and has known the land in
dispute for more than twenty years. Col. Frank Coxe had pos-
session of it when he first knew it, and used it for "timber, wood,
pine, and such" and would cut wood there nearly every day—
firewood and stove wood. There was a great deal of chestnut
timber on the land and Coxe got boards and rails from the land
every once in a while. The witness cultivated a portion of the

other part of the Elwood land, and lived on it thirteen years as a tenant of Colonel Coxe; cultivated it part of the time, and while he lived there he got all the wood he needed from the land in dispute every year, as did the other tenants of Colonel Coxe. The witness also stated that the land in dispute was not cleared, it being ordinary timber land and "mighty little" of it could be cultivated; it was rough land and "some of it you could not stand upon without holding to the bushes"; the land was poor and Coxe had been cutting timber on it all these years; he opened and laid out roads on it in order to haul the wood off; one of the roads was there when he first took possession. There was much other evidence of the same kind. There also was evidence that the land was not fit for cultivation, but was only useful and valuable for its timber; it could not be cultivated profitably, and also that Coxe was using it, as indicated, for its timber and reserving it for the purpose of subsequently getting a water supply, it being in evidence that he had run a level on the branch to see if there was fall enough to the place he lived so that he could utilize the water, which he found to be the case. The case was submitted to the jury under an instruction as to what would constitute, in law, adverse possession, and the only question, as was admitted on the argument, is whether the facts we have stated, if found by the jury, were sufficient to constitute such possession. The jury rendered a verdict for the plaintiff, and from the judgment thereon the defendant appealed.

*S. Gallert for plaintiff.*
*Smith & Shipman for defendant.*

WALKER, J. The material issue in this case is easily apparent from the state of the proof and the admissions in the record. Plaintiff did not have a paper title for the *locus in quo,* but relied solely upon his color of title and adverse possession. Defendants introduced a State grant for the land, but did not connect themselves with it. The only effect of this evidence was to show that the State claimed no interest in the land, and to relieve the plaintiffs from the necessity of showing that fact. But it is conceded that our decision must turn upon the character of plaintiff's possession as being, or not, adverse and suffi-

cient, in law, to ripen his color into a good and perfect title to the land. The evidence tends to show that the land was very barren and only fit for use as timber-land. A large part of it was so steep and declivitous that it was necessary to hold to the bushes in order to stand and "keep your equilibrium." There was other evidence to the effect that the land was in the possession of plaintiff, and those under whom they claimed, for many years—at least thirty—and that Colonel Coxe, who claimed the land, it does not appear under what title, except the color, occupied the land with those rightfully claiming under him, and asserted dominion over it for more than the period required by law to ripen the title; that he did not clear or cultivate any part of the land, because it was not fit for cultivation or clearing. It was mostly wild and unarable land and only useful and valuable for the timber. It was further in evidence that Colonel Coxe, his tenants and those claiming under Coxe, for many years cut timber, for the purpose of making it into lumber, and also for firewood and housebote. The witness described this user as being for "timber, wood, boards, pine, and such," and this was an everyday occurrence, and roads, already there, were used and new ones laid out for the purpose of utilizing the land in its then state and condition. His tenants got firewood and stove-wood from the land in the same way.

There is no doubt but that the possession, if adverse, was open, visible, notorious and continuous, and no owner of the land could have failed to take notice of it as an assertion against his title, from the very beginning. There was also evidence that the plaintiff and those under whom they claimed "had possession of the land" for more than seven years.

We think this case is governed by *Berry v. McPherson,* 153 N. C., 4. There are two propositions decided in that case, which we take from the headnotes.

1. "The testimony of the plaintiff, unexplained and uncontradicted upon cross-examination, that he and his father had been in possession of the *locus in quo* for thirty years, in order to show possession under color of title as against the State under deeds he had introduced in evidence, is sufficient to go to the jury."

2. "While the evidence of title by adverse possession must tend to prove the continuity of possession for the statutory period in plain terms or by 'necessary implication,' it is sufficient to go to the jury if it was as decided and notorious as the nature of the land would permit."

We may well show the application of the principles, settled in that case, to those which have been established in the case at bar, in referring generally to what was said by the Court, through *Justice Brown:* The evidence of plaintiff in the case was, that "there is an island about midway of his possession and a road leading across the swamp to the island; that he and his father kept up this road; that there was a road leading across the woods to the island for a third of the way from which he and his father regularly got firewood; that his father sold timber off the land in controversy, and that six years ago defendant cut timber on this land and promised to pay plaintiff for it; that on one occasion defendant, in presence of plaintiff and his brother, recognized plaintiff's possession by admitting the cedar corner claimed by plaintiff to be the true division corner. Plaintiff further testified that tenants on his farm cut wood on this land whenever they needed it, and that he had cut and sold shingles off it frequently, and his father had cut and sold railroad ties. Plaintiff further stated that he sold pine timber off the land and allowed the neighbors to get wood off it whenever they desired. The land in controversy appears to be swamp land, uninclosed and with no habitation upon it. The evidence indicates that plaintiff and his father, for more than thirty years, exercised acts of dominion over the land, and made from it the only profits and use of which it is susceptible. From the evidence of the witness the jury may well infer that these acts were those of ownership and not those of an occasional trespasser, and that they were repeated and continuous for a considerable period of time. The possession was as decided and notorious as the nature of the land would permit, and offered unequivocal indication that plaintiff and his father were exercising the dominion of owners and were not pillaging as trespassers. *Williams v. Buchanan,* 23 N. C., 535; *Tredwell v. Reddick,* 23 N. C., 56; *Hamilton v. Icard,* 114 N. C., 538; *Simpson*

*v. Blount,* 14 N. C., 34; *Baum v. Shooting Club,* 96 N. C., 310. It is true that in proving continuous adverse possession under color of title, nothing must be left to mere conjecture. The testimony must tend to prove the continuity of possession for the statutory period either in plain terms or by 'necessary implication.' *Ruffin v. Overby,* 105 N. C., 83. This possession need not be unceasing, but the evidence should be such as to warrant the inference that the actual use and occupation have extended over the required period, and that during it the claimant has from time to time continuously subjected some portion of the disputed land to the only use of which it was susceptible. *Ruffin v. Overby, supra; McLean v. Smith,* 106 N. C., 172; *Hamilton v. Icard, supra.* While the evidence offered is not necessarily conclusive, if taken to be true, as to the fact of possession, we think it sufficient to be submitted to the jury, under appropriate instructions, that they may draw such inference as they see proper, bearing in mind that the burden of proof is on the plaintiff to establish the fact of possession for the statutory period by a preponderance in the proof." This is practically a motion by the defendant to nonsuit the plaintiff. We are of the opinion that there was sufficient proof of facts showing adverse possession, and the case was properly submitted to the jury for their consideration. There was consequently no error in the rulings of the court.

No error.