### J. M. McCASKILL et al. v. PEGRAM FARM AND LUMBER COMPANY.

(Filed 28 April, 1915.)

1. **Limitation of Actions—Deeds and Conveyances—Color—Adverse Possession—Title Out of State—Twenty-one Years.**

Where in an action to recover lands a party claims under a grant from the State and mesne conveyances, and fails to show a connected paper title by not locating the lands within the description of the grant, it is necessary for him to show adverse possession of a sufficient character for twenty-one years under color to take the title out of the State and vest it in himself.

**2. Limitation — Deeds and Conveyances —"Color"— Adverse Possession — Character of Possession—Evidence Sufficient.**

> The continuity and character of possession necessary to ripen the title of the claimant under color is held sufficient which shows the paper title of the claimant, that the land was woodland, uncleared and unprofitable to cultivate, and that he and those whose previous possession inures to his benefit had supplied themselves with wood, of which they used a great deal, and had but little woodland on an adjoining tract whereon they lived; that the land had been bought to obtain this wood supply; that their possession of this character had been continuous for the statutory period, and no adverse claim had been made upon the land before the institution of the present action. *Locklear v. Savage,* 159 N. C., 236, cited and applied.

Appeal by plaintiff from *Lane, J.,* at December Term, 1914, of Richmond.

Action to recover land. The plaintiffs alleged that they were the owners of the land in controversy, and this was denied by the defendant.

At the conclusion of the evidence his Honor entered judgment of nonsuit upon motion of the defendant, and the plaintiffs excepted and appealed.

*John P. Cameron and M. W. Nash for plaintiffs.*

*Adams, Armfield & Adams, and Stack & Parker, and Lowdermilk & Dockery for defendant.*

Allen, J. The plaintiffs have failed to show a connected chain of title to the land in controversy, as they did not locate the grant introduced in evidence, and they must rely on an adverse possession for twenty-one years under color to take the title out of the State and vest it in themselves. *Mobley v. Griffin,* 104 N. C., 112. They introduced in evidence a deed to their father, who is dead, dated 14 February, 1880, and registered 12 December, 1885, which is color of title, and offered evidence that this deed covered the land in dispute.

The question, therefore, presented by the appeal is whether any evidence of adverse possession was introduced which ought to have been submitted to the jury, and in passing upon this question we have no right to determine the weight or sufficiency of the evidence, but simply to determine whether there was any evidence of the fact, giving to it the construction most favorable to the plaintiffs.

The authorities on what is necessary to constitute an adverse possession are fully reviewed in *Locklear v. Savage,* 159 N. C., 236, and it is there said: "It consists in actual possession, with an intent to hold solely for the possessor to the exclusion of others, and is denoted by the exercise of acts of dominion over the land in making the ordinary use and taking the ordinary profits of which it is susceptible in its present state, such acts to be so repeated as to show that they are done in the character of owner, in opposition to right or claim of any other person, and not

merely as an occasional trespasser. It must be as decided and notorious as the nature of the land will permit, affording unequivocal indication to all persons that he is exercising thereon the dominion of owner. *Loftin v. Cobb,* 46 N. C., 406; *Montgomery v. Wynns,* 20 N. C., 527; *Williams v. Buchanan,* 23 N. C., 535; *Burton v. Carruth,* 18 N. C., 2; *Gilchrist v. McLaughlin,* 29 N. C., 310; *Bynum v. Carter,* 26 N. C., 310; *Blount v. Simpson,* 14 N. C., 34; *Tredwell v. Reddick,* 23 N. C., 56."

Applying this rule, we are of opinion there was evidence of an adverse possession which ought to have been submitted to the jury.

The evidence of the plaintiffs tended to prove that the land in controversy is woodland; that there is no house on it; that up to the time of the entry of the defendants, about 1910, none of it had been cleared, and that it could not be cultivated profitably; that the father of the plaintiffs and, after his death, their mother lived on another tract of land about a mile distant; that there was very little wood on the land on which they lived; that their father was a school teacher and used a great deal of wood, and that the land was bought for wood.

J. M. McCaskill testified that his father died in 1888, leaving two children, who are the plaintiffs; that he stayed at home with his father and mother from the time the land was bought until the fall of 1887; that after he left home, in 1887, he returned five or six times each year; that the land in controversy was bought for the purpose of getting wood and lightwood from it; that up to the time he left home he hauled wood and lightwood from the land; that he cut blackjack on the land and burned it for ashes; that he hauled wood and lightwood from the land every winter and all during the winter; that this was done every year while he was at home; that after his father died, his mother took charge of the land, and that she used it as it was used when he was at home; that his mother married a Mr. Hart about 1898, and that it was used by them as it had been before; that it had been used every year since it was bought; that Mr. Hart had blackjack cut on the land and they had to get wood and lightwood from it all the time; that no one ever disputed their title to the land up to the time of the entry by the defendant, and that the land was worked by different persons for them.

C. W. McCaskill, another plaintiff, testified that he was 7 years old when his father died, and that he did not leave home until about 1900; that he used the land for lightwood, with his father's permission; that the land was used each year for getting wood and lightwood; that his mother used it for turpentine; that from 1900 to 1910 his stepfather was using the land for the purpose of getting wood and lightwood; that after he left home he returned each year and saw how the land was used; that they got their winter's wood from the land each year as long as he stayed at home, and also their wood for the summer from the land.

Daniel McQueen, a witness for the plaintiffs, testified that he was more than 60 years old; that he worked on the land for Mr. McCaskill, father of the plaintiffs, while he was living; that he worked for him every year; that he got wood and lightwood for him until he died; that he worked on the land after he died; that he hauled wood and lightwood and cut blackjack and cut down trees; that he got wood and lightwood off the land more or less every year that Mr. Hart was living; that he commenced working on the land for Mr. McCaskill and then worked on it for Mr. Hart, and that he thinks he worked on it as long as twenty-one years or more.

There was other evidence introduced in behalf of the plaintiffs tending to corroborate the evidence of these witnesses.

Reversed.