The action was brought to recover a parcel of land in the town of Sanford outside of the defendant's right of way, and designated on the map filed in this Court with the record by the figures 1, 3, 4 and 5. It seems that the parties claimed from a common source of title, John W. Scot, and defendant also claimed the land by adverse possession for twenty years; and upon this branch of the case the court charged the jury as follows: "Adverse possession must be continuous. There must not be any break at all — no moment of time when the land is not occupied; but it must be an intention to take possession; and if possession must be such as to notify the public, generally, and the owners themselves, who claim title, that there is an adverse possession; and if you find that the defendant has had such possession as this, it would be your duty to answer the first issue "No" and the second issue "Yes.'"
This instruction was erroneous, as we have often decided that the possession may be adverse for the required period without being unceasing. Referring to adverse possession in Berry v. McPherson, 153 N.C. 4,Justice Brown says: "This possession need not be unceasing, but the evidence should be such as to warrant the inference that the actual use and occupation have extended over the required period, and that during it the claimant has from time to time continuously subjected some portion of the disputed land to the only use of which is was susceptible.Ruffin v. Overby, 105 N.C. 83; McLean v. Smith, 106 N.C. 172;Hamilton v. Icard, 114 N.C. 532. While the evidence offered is not necessarily conclusive, if taken to be true, as to the fact of possession, we think it sufficient to be submitted to the jury, under appropriate instructions, that they may draw such inference as they see proper, bearing mind that the burden of proof is on the plaintiff to establish the fact of possession for the statutory period by a preponderance in the proof:" This statement of the law has been approved in (122)McLean v. Smith, 106 N.C. 172; Coxe v. Carpenter,157 N.C. 561; Locklear v. Cavage, 159 N.C. 239.
But the plaintiff contends that this error is harmless, as the defendant cannot acquire title to land by averse possession, and, if it can do so, there is not evidence of such possession for twenty years by defendant *Page 168 
(121)
[EDITORS' NOTE: THE MAP IS ELECTRONICALLY NON-TRANSFERRABLE.], SEE 172 N.C. 168.] *Page 169 
and those under whom it claims. The position, in our opinion, is not tenable. The defendant could acquire title by grant or deed, and why not by adverse possession for twenty years, which tolled the entry originally, because there arose therefrom the presumption of a grant or deed? If the land had been conveyed to the defendant, and the act of acquiring and holding it was ultra vires, no one but the State could complain, and a private person would not be heard to attack the title on that ground. This question is learnedly discussed by Justice Ashe in Mallett v. Simpson,94 N.C. 37, 41, which was an action, as here, to recover land. In that case it appeared that the land had been purchased by the railroad company for the purpose of getting cross-ties, and firewood for fuel, and it was held that it might be bought for that purpose, even under its charter powers, and sold when no longer needed. But the Court took another view of the subject which it said was fatal to the plaintiff's contention that the company could not acquire land save for railroad purposes and under the powers contained in its charter. Considering, it was said that the company had not purchased the land in question nor used it for purposes contemplated by its charter, the deed to it from the grantor vested the legal title, and its right to purchase and hold the land cannot be collaterally assailed. No one but the State can take advantage of the defect that the purchase was ultra vires. This principle is fully sustained by the authorities. Like an alien who is forbidden by the local law to acquire real estate, he may take and hold title until "office found."Fairfax v. Hunter, 7 Cranche, 604.
At common law, corporations generally have the legal capacity to take a title in fee to real property. They were prohibited in England by the statutes of mortmain, but these statutes have never been adopted in this State, so that the common-law right to take an estate in fee, incident to a corporation (at common law), is unlimited, except by its charter and by statute. But the authorities go to the extent that even when the right to acquire real property, is limited by the charter, and the corporation transcends its power in that respect, and for that reason is incompetent to take title to real estate, a conveyance to it is not void, but only the sovereign (here the State) can object. It is valid until assailed in a direct proceeding instituted by the sovereign for that purpose. Leazern v. Hilegas, 7 Sarft., 313; Gonndie v. Northampton WaterCo., 7 Pa, St., 233; Bank v. Whiting, 103 U.S. 99; Angel and (123) Ames on Corporations, secs. 152-177; Runyon v. Coster, 14 Pet., 122; Bank v. Poiteaux, 3 Ran. (Va.), 136. In the Leazern case the corporation had been restricted by its charter from purchasing land except for certain purposes, which it had transcended, and the title was assailed upon the ground that the purchase was void, but the Court held: *Page 170 
"The corporation might take independent of a provision in the act of incorporation, and the title of the corporation, like that of an alien, would be defeasible only by the State. No one can take advantage of the defect (of title) but the State." In another case it was held: "When a corporation was authorized by its charter to purchase real estate for certain purposes, but for no other, a deed executed to it by one having capacity to convey vested the title in the corporation, and such title could be assailed, on the ground that the purchase was ultra vires, only the State or by a stockholder." Hough v. Land Co., 73 Ill. 23. This Court inMallet v. Simpson, supra, drew the following deduction from the authorities, that "If the corporation acquired the land for any of the purposes authorized by the charter, its purchase and sale was valid; and it, on the other hand, it transcends the authority conferred by the charter, its purchase and sale would still be valid against everybody except the State, and its title could not be collaterally assailed, as was attempted in this case." The same doctrine is stated as the prevailing one in Womack's Law of Corporations, pp. 76 and 77, where cases decided by this Court are collected. The same question is fully discussed in Barcello v.Hapgood, 118 N.C. 717, and Bass v. Navigation Co., 111 N.C. 439, by JusticeAvery, and the principle we have cited was approved.
A text-writer says: "Where a corporation, having the power to acquire and hold land for certain purposes only, takes a conveyance of land for a purpose not authorized, or takes more land than it is authorized to hold, the conveyance is not absolutely void, The State may proceed directly against it for exceeding the powers conferred upon it; but the question is solely between it and the State. Neither the grantor nor any other private individual can attack the conveyance in a suit by or against the corporation to recover the land. So long as the State remains inactive, no one can complain; for it would lead to infinite embarrassment if in suits by corporations to recover possession of their property inquires were permitted as to the necessity of such property for the purposes of their incorporation, and the title made to rest upon the existence of that necessity." Clark on Corporations (Ed. of 1897), p. 167.
There is evidence in this case, though, that the defendant had been using the lot in dispute for railroad purposes. In Raleigh v. Durfey, 163 N.C. 154, we held that a corporation (in that case a (124) municipality) can acquire title to land by adverse possession. It was treated by the justice who wrote the opinion as a matter of course, by the use of this language: "It is admitted that the plaintiff has been in undisputed actual adverse possession under known and visible lines and boundaries of the entire land and property for sixty years, occupying the *Page 171 
same and collecting the rents. Upon these facts it would seem to be plain that plaintiff has acquired an absolute title to the property. One of the methods of acquiring title to lands is by adverse possession. Mobley v.Griffin, 104 N.C. 15. We know of no reason or authority by which a municipality is excluded from that rule and rendered incompetent to acquire title by that method."
We are also unable to agree to the proposition that there is no evidence of adverse possession by the defendant in this record. The evidence of several of the witnesses, and especially of J. W. Cunningham, and Dr. W. A. Monroe, was that the defendant "had been in possession of the land (which was fenced in January, 1914) for more than twenty years." The witness W. A. Monroe said he had lived in Sanford for twenty-two years and knew the land in question, and that the defendant had been in possession since he had lived there, and that he is resided within 20 or 250 feet from it. This carried the case to the jury under the authority of Bryan v. Spivey,109 N.C. 71, and Berry v. McPherson, 153 N.C. 5. It was said in Bryan v.Spivey, supra, by Justice Shepherd: "A witness may testify directly, in the first instance, to the fact of possession, if he can do so positively, subject, of course, to cross-examination," citing Abbott Trial Ev., 622 and 590; Rand v. Freeman, 1 Allen (Mass.) 517. "Possession expresses the closest relation of fact that can exist between a corporal thing and the person who possesses it, implying either (according to its strictest etymology) an actual physical contact, as by sitting or (as some would have it) standing upon a thing." Burrill Law Dict., 318.
It is for the jury to determine finally, upon the evidence and under the instructions of the court, whether there has been adverse possession, in the sense of the law, sufficient to bar the plaintiff's original right of entry, or to divest his title if he had one. The testimony of a witness may, perhaps, be disregarded sometimes, if it clearly appears to be without any substantial basis, as said in Berry v. McPherson, supra; but the right to exclude it, if such exists, should be exercised sparingly and with great caution, lest the court invade the province of the jury, whose special function is to pass upon the facts.
But we are of the opinion that, in this record, there is to be found ample testimony of such a possession for twenty years as the law regards to be adverse, and which, if found by the jury to correctly embody the facts, will defeat the plaintiff's recover. We would refer particularly to the testimony of D. N. McIver, R. R. Riley, Primus Holmes, J. C. Gregson, J. K. Perry, J. W. Cunningham. Other witnesses testified to the same effect, and some as to the adverseness (125) of the possession, but not for the full time, though their testimony if it related to different years of the full period of time would go to the jury for what it is worth. *Page 172 
What will constitute adverse possession is a question we have often decided. It is such a possession as will expose the occupant to an action by the true owner, and which if continuous and notorious for seven years under color, or for twenty years without color, title being out of the State, will ripen into a perfect title. It consists in actual possession with an intent to hold solely for the possessor to the exclusion of others, and is denoted by the exercise of acts of dominion over the lad in making the ordinary use and taking the ordinary profits of which it is susceptible in its present state, such acts to be so repeated as to show that they are done in the character of owner, in opposition to the right or the claim of any other person, and not merely as an occasional trespasser. It must be as decided and notorious as the nature of the land will permit, affording unequivocal indication to all persons that the occupant is exercising thereon the dominion of owner. Loftin v. Cobb, 46 N.C. 406; Montgomery v.Wynns, 20 N.C. 527; Williams v. Buchanan, 23 N.C. 535; Burton v. Carruth,18 N.C. 2; Gilchrist v. McLaughlin, 29 N.C. 310; Bynum v. Carter,26 N.C. 310; Simpson v. Blount, 14 N.C. 34; Tredwell v. Reddick,23 N.C. 56; Currie v. Gilchrist, 147 N.C. 649; Berry v. McPherson, supra;Coxe v. Carpenter, 157 N.C. 561; Locklear v. Savage, 159 N.C. 239;McCaskill v. Lumber Co., 169 N.C. 24.
We do not, of course, pass upon the credibility of witnesses, as that is solely for the jury to consider and determine. The utmost limit of our province has been reached when we decide that there is some evidence for the jury; and we are not permitted to go beyond it. The jury are left to settle disputed questions of fact, without any intimation from us to the weight of the evidence or as to its preponderance.
There was error in the charge as above indicated, and, therefore, the case must be submitted to another jury.
New trial.
Cited: Alexander v. Cedar Works, 177 N.C. 146 (2c); Wallace v. Moore,178 N.C. 115 (4e); Tilghman v. Hancock. 196 N.C. 781 (1c, 2c); Duckett v.Lyda, 223 N.C. 359 (6c). *Page 173 
(126)