Dantel, J,
 

 This is an action of trespass
 
 q. c. fregit.
 
 The pleas are, “
 
 liberum tenementum ,”
 
 and “
 
 not guilty.”
 
 The first plea admits the fact, that the plaintiff was in possession of the
 
 close
 
 described' in the declaration; and
 
 *311
 
 that the defendant did the acts complained of; raising only the question, whether the close described was the defendant’s freehold or not. 2
 
 Greenleaf on Ev. Sec.
 
 626. But under the plea of “ not guilty,” the defendant may give in evidence any matters, which go to show that he never did the acts complained of; for example, that he did not enter the plaintiff’s
 
 close ;
 
 so, he may show, that the freehold and immediate right of possession are in himself, or in one, under whom he claims title ; thus disproving the plaintiff’s allegation, that the right of possession is in him. 2
 
 Greenleaf
 
 513. Under the first plea, if it stood alone, the plaintiff would have had to prove nothing but the amount of damages he had sustained ; and the burthen of proving that the freehold was in the defendant (if the fact was so) lay upon him. .Under the other plea
 
 not guilty,
 
 (the defendant may plead double) the plaintiff was driven to the necessity of sustaining by proof, the affirmative allegation in his declaration, that the defendant
 
 broke and entered his close,
 
 and built thereon his stables.
 

 The eastern abuttal of the
 
 close,
 
 as described in the plaintiff’s declaration, is Watson’s line. The plaintiff, to show his constructive possession of the place, when the defendant entered and built his stables, began his evidence by exhibiting a grant, made to John McFarland for 150 acres of land, and dated the 18th of August 1787. The first line of the patent, ran to Smiley’s corner, (Gulledge’s grant of 1774, or 5,) then with, and beyond his line South 60, East 180 poles, to a stake among three pines
 
 on Watson’s line ;
 
 then, with and beyond it, South 35, West 125 poles; then North 67, West 184 poles to the beginning. The plaintiff then introduced a deed, dated on the 30th day of December 1816, from A. Nicholson to Angus Gilchrist, for the same land, and described by the same boundaries. He then proved, that A. Gilchrist entered and possessed the said lands up to his death, in the year 1834, when he devised it to his son
 
 *312
 
 James Gilchrist, who took it into possession. James Gilchrist conveyed the same land to the plaintiff, John Gilchrist, by deed, dated the 20th day of
 
 January,
 
 in the year 1840, who entered and possessed it, up to the commencement of this action. N
 

 The distance called for, in the plaintiff’s second line, gives out before it reaches Watson’s line as contended by the plaintiff; he, however, insisted, that he had a right to go to the
 
 Watson line,
 
 called for in his title deeds; and he offered witnesses to prove, that it had been so reputed and understood for a long time. The defendant objected to parol evidence, as inadmissible to establish where Watson’s line ran, before the plaintiff had laid a.foundation for such evidence, by showing some written document, that Watson ever had a line for any land in that neighborhood, and he insisted, that the plaintiff should be non-suited in case of his inability to produce some written document to that effect. The Court, however, refused to non-suit the plaintiff, and let in the parol evidence. We think that the defendant has no right to complain of this -, because, independent of the plaintiff’s right to prove a line of Watson by reputation, the Court had no right to non-suit, if the plaintiff was
 
 willing to
 
 risk a verdict against him. The defendant did not, however, rely upon an error in that decision, and stop his case. He proceeded and exhibited a grant for a 100 acre tract of land to one Thomas Gaddy, dated in the year 1773, anda deed for the same lands from T. Gaddy to
 
 Alexander Watson,
 
 dated in the year 1776, and thus, himself, showed a line of Watson, as called for. Both parties, then admitted, that the call for
 
 Watson’s
 
 line, in the plaintiff’s title deeds, must be the Western boundary line of the Gaddy grant. And where that Western line ran, or lay, was the bone of contention between the parties.
 

 The plaintiff insisted that the red dotted line, designated as X. N. Y,, was the true Watson line. And the defendant, (who had married Watson’s daughter, and had pur
 
 *313
 
 chased of him, the two tracts of land mentioned on the plot,
 
 to-wit
 
 • the Gaddy grant of 100 acres, and the Alex-der Watson grant of 250 acres,) insisted that the black line, designated as running from black L. to 2, was the Eastern boundary of the John McFarland grant, and was the
 
 Watson line
 
 called for in the boundaries of the plaintiff’s deeds. If his position was true, the
 
 locus in quo,
 
 would be the defendant’s freehold. The land had been granted, and if the stables were within the boundaries of the plaintiff’s title-deeds, then the long continued adverse possession of the John McFarland land, from 1816, to 1843, under colour of title, would bar McFarland and his heirs, and give a good title to the plaintiff. The plaintiff proved, that he had cleared a field of 30 or 40 acres, soon after he purchased the land in the year 1840, up to within eighty yards of the stables, and they were built by the defendant in the year 1843. The defendant then proved that he had a field, and had continued in possession of it, claiming under the colour of title he derived from Watson, for more than seven years.
 

 He proved, that his field extended West of the red dotted line
 
 N. Y.
 
 To repel the force of this testimony, the plaintiff offered the record of an action of ejectment, which had been brought by Angus Gilchrist, as lessor of the plaintiff’, against the defendant, in 1819 or 1820, in consequence of a controversy, that then arose between them, about the said boundary line, in which there was a verdict and judgment for the plaintiff. This evidence was objected to by the defendant, but was admitted by the Court: We think, that the Judge did right in admitting the evidence, for the purpose for which it was offered in this case. The land was described in the declaration in that suit, in the same manner as it is in the present declaration, and in the grant to McFarland; and on the recovery by Angus Gilchrist, the present defendant abandoned the land on the Western side of the line IV.
 
 Y»
 
 as having been recovered in that suit, upon the ground
 
 *314
 
 that
 
 N. Y.
 
 was the boundary between the parties; or, at least, the plaintiff so contended, and it was a proper question for the jury, whether the defendant had so abandoned, and if so, for what reason. For it would be an argument for the plaintiff upon the question of boundary, if the defendant had admitted as far back as twenty-five years, that the boundary was in truth as the plaintiff now claims. Now, to that end, it was material to give in evidence, the record of the former suit, in order to show for what land, and by what boundaries, the recovery there was, and thus satisfy the jury of the defendant’s reasons, immediately after that trial, for removing his fence and placing it where he did.
 

 The defendant contended, that the plaintiff could not maintain this action, though he had established his title up to the red dotted line
 
 X. Y.,
 
 because he had not regained possession of the
 
 locus in quo
 
 at the date of his writ. The Court said, that this action might be maintained for the first entry, if the plaintiff had a constructive possession of the
 
 locus,
 
 at the time the wrongful entry of the defendant was made, although he had not regained possession at the date of the writ. We concur in . this opinion, and have given our reasons in
 
 Smith
 
 v.
 
 Ingram
 
 &
 
 others,
 
 decided at this term. The defendant also insisted that at the time the act complained of was committed, he was as much in possession as the plaintiff. The Court charged the jury, that, if the defendant, when he removed his fence, after the trial in the ejectment, intended to place it on the red line X.
 
 Y.,
 
 so as not to enclose any land West of that line, but' did by mistake place it so as to include a part of the land West of that line, it would not avail to give him possession up to the line
 
 H. I
 
 even if that was the boundary of the Watson grant of 2S0 acres. We see no error in this part of the charge of his Honor. Where the tenant claims by a
 
 disseisin
 
 ripened into a good title by lapse of time, he must show an actual, open, and exclusive possession
 
 *315
 
 and use of the land as his own,
 
 adversely
 
 to the title of the demandant. It must be known to the adverse claimant or be accompanied by circumstances of notoriety.
 
 2 Greenleaf,
 
 5, 557. If the defendant intended to place his fence
 
 on
 
 the line and to abandon all the land west of that line, (which was a question proper for the jury,) then, the accidental circumstance of the labourers in erecting
 
 the
 
 fence, placing a small part of it west of the line, would not satisfy the requirements of the law, that the defendant’s possession west of that line, must foe
 
 adverse
 
 to the title of Gilchrist.
 
 Green
 
 v.
 
 Harman,
 
 4 Dev. 158. The defendant insisted, that the plaintiff must stop at the termination of his distance, and then his eastern line must be the black line, L. 2, as there was no evidence of a Watson line in 1787, or at any period anterior thereto. Where another known line is called for, and the distance gives out before reaching the line called for, the distance is to be disregarded. The defendant is mistaken, when he says, there was no evidence of a Watson line in 1787, or before. For Watson purchased the Gaddy tract of land in 1776 ; and the lines of that tract, after that date, were called Watson’s lines, as we learn from Watson himself, in his survey of his grant for 250 acres, surveyed the 10th of November, 1785. In that survey, the lines of the Gaddy land, are called Watson’s lines. And whether this evidence was furnished on the trial by the plaintiff or the defendant, is now quite immaterial. The defendant insisted, that the line H. I. was the western line of the Watson grant of 253 acres; and that he had been in possession for more than seven years, of the lapped part, before the plaintiff took possession in the year 1840; and he contended that his seven years possession under Watson’s grant, gave him a better title to the locus in
 
 quo,
 
 than the plaintiff.
 

 The answer to this portion of the defence is, that the seven years possession by the defendant of the lapped part, could not be made out, without resorting to the
 
 *316
 
 possession of the very small part of the land, that was by mistake, included within the defendant’s fence, when he in fact intended, as the jury have found, to place it on the red line. That possession of the land by the defendant, inside of the fence west of the red line, was not an
 
 adverse
 
 possession, in the opinion of the Judge and jury; and a seven years possession (not adverse) never ripens the tenant’s title into a perfect title. For an adverse possession is one taken exclusively and upon a claim to hold as his own against the true owner.
 

 We cannot discover any error in the decisions ®f the Judge, unless it may be the admission, in evidence, of the judgment and execution against John McFarland: if, indeed, that be an error. The title deeds exhibited by the plaintiff, beginning with that from Nicholson, and the evidence of the continued possession from the year 1816 up to this time, gave him just as good a title, with-1 out the judgment and execution, as with them. They, therefore, were immaterial to the plaintiff’s right to recover in this action; and being so, it is not necessary that we should decide on their validity, as their admission in evidence by the Judge was immaterial, and therefore, founds no ground for a new trial.
 

 PER CURIAM. Judgment affirmed