WM. P. ROBERTS and others v. RICHMOND PRESTON.

*Deed, description in—Declaration of Grantor—Res Gestæ—Evidence as to Boundary.*

1. Plaintiffs claimed title to land under M. R. Defendant claimed title to the land under M. and H., to whom certain lands had been conveyed by M. R. The dispute was as to the location of the beginning point called for in the deed to M. and H. If located as contended for by plaintiffs it did not embrace the land in controversy, and consequently the land was owned by plaintiffs. There were no courses or distances given in the deed; *Held*, that it was competent for plaintiffs to prove by H. (one of the grantees in the deed from M. R. to M. and H.) the declarations of M. R. made to him, H., contemporaneously with the delivery of the deed, that the deed did not convey the land in controversy.

2. A statement made under such circumstances amounts to more than a mere declaration; it is an act, a fact, *pars rei gestæ.*

3. The evidence was admissible, not to aid a defective description, but to aid the jury in determining where the beginning point and boundaries of the land were.

CIVIL ACTION, to recover damages for trespass on land, tried before *Graves, J.,* at Fall Term, 1887, of CHOWAN Superior Court.

Judgment for defendant; plaintiffs appealed.

The record is voluminous, and the statement of the case is a lengthy one, but as only two exceptions appear in the record, only so much of the case is stated here as is necessary to the full understanding of these exceptions.

In the progress of the trial it appeared that Mills Roberts, under whom the plaintiffs claim, owned two adjoining farms, one called Long Beach and the other Long Lane, on Albemarle Sound, in Chowan County, Long Beach being on the west of Long Lane, and that in 1863, the said Mills Roberts executed a deed, conveying the land described therein, to Merrimon & Hughes, under whom the defendant claims, by a chain of mesne conveyances, containing the same description in each that is found in the deed from Mills Roberts to Merrimon & Hughes, and this description, so far as it is necessary here to set out, is as follows: " A certain tract of land and Long Beach fishery, on Albemarle Sound, in Chowan County, beginning on the sound at a ditch in the Roberts-Benbury farm; thence up the ditch to the fence; then along the fence, outside, to the edge of the swamp; then up the swamp to the said Roberts-Benbury line; then along that line to the main Edenton road "—and other calls, around to the beginning.

It became material to locate the description in the deed from Roberts to Merrimon & Hughes, for if the land upon which the alleged trespasses were committed were not embraced in the said deed, the plaintiffs were entitled to recover.

*          *          *          *          *          *

The plaintiffs contended that the description in the deeds, under which defendant claims, began on the sound at a ditch which emptied into the sound, ran along that ditch

to the fence; then along that fence west, on the outside, to the edge of the swamp, to a line of marked trees, which they claimed is the Roberts-Benbury line; then along that line of marked trees to the Edenton road.

The defendant insisted that the description begins on the sound at the southwest corner of the Roberts-Benbury line, at a point east of the ditch claimed by plaintiffs as the true location; thence northwardly along the original Roberts-Benbury line, along a ditch to the fence; then along the fence, westwardly, to the edge of the swamp; then up the swamp to another line of marked trees, which defendant insists is the Roberts-Benbury line called for; then along that line of marked trees to the Edenton road; or, if the beginning is properly to be on the sound, at the ditch, insisted upon by the plaintiffs, as the true beginning, and run up the ditch to the fence, it then ran east, along the outside of the fence, to the edge of the swamp, to the Roberts-Benbury line, as claimed by the defendant.

If the true location of the lines of the deed from said Roberts to Merrimon & Hughes is as the plaintiffs insist, then the place where the trees were cut is not embraced in the description; but if either of the views of the defendant is correct, then the place where the trees were cut is embraced in the description.

It appeared from the plots used on the trial, that if the location of the description is, as contended for by plaintiffs, both as to the Roberts-Benbury line and the Merrimon & Hughes line; that about one hundred and four acres of the Long Beach farm were not embraced in the deed of Roberts to Merrimon & Hughes, (and there was evidence tending to show that this one hundred and four acres were well timbered), and that if the location was as contended for by the defendant, about twenty-nine acres of Long Beach farm was not embraced (and the evidence tended to show that this

was cleared land), there was evidence tending to show that there was not timber enough on Long Lane farm to fence it.

There was evidence on the part of plaintiffs tending to show, that after the sale to Merrimon & Hughes, Roberts, and those who claimed under him, continued to keep the cleared land, east of the line claimed by the plaintiffs, enclosed and cultivated, built houses thereon and put tenants in them, up to three months before the bringing of this action; that he erected buildings and put up a steam saw-mill on the woodland east of the line claimed by the plaintiffs, and west of the line claimed by defendant; cut timber for market and did other acts tending to show occupation and actual possession, up to what plaintiffs claim to be known and visible boundaries; and plaintiffs also offered evidence tending to show that defendant, and those from whom he claims, did work up to the line claimed by plaintiffs, and not over, until the trespasses complained of.

The defendant offered evidence tending to show the Roberts-Benbury line, tending to show the age of marks on trees on the line claimed by defendant, and plaintiffs' declarations to John Roberts, and other testimony tending, as he insisted to the jury, to show that his view was correct, and among other things, that there was another ditch extending to the edge of the swamp near the sound. The plaintiffs offered evidence tending to show that this ditch did not extend to the sound, and that it had been cut subsequent to the making of the deed by their ancestor.

1st Exception.—The first exception of plaintiffs is the ruling of the Court excluding the testimony of Hughes, as to what was said by Roberts at the time the deed was made.

The plaintiffs offered to prove by one of the vendees in the said deed, that at the time of its execution Roberts said to him it did not convey the whole of Long Beach, but that he had reserved to himself one hundred acres of timber for the use of his Long-Lane farm. To this the defendant ob-

jected, and the Court sustained the objection, and the plaintiffs excepted.

2d Exception.—It appeared that at a sale made by the Clerk and Master in Equity, in 1858, Mills Roberts bought the Long Beach farm as the property of Alexander Cheshire, and paid for the same and took possession, and no deed was then executed. Since the beginning of this action a deed has been executed under an order of Court in the original cause, and this deed the plaintiffs offer in evidence, and the defendant objects, and the Court sustains the objection, and the plaintiffs except.

*Messrs. T. F. Davidson* and *E. C. Smith,* for the plaintiffs. *Mr. C. M. Busbee,* for the defendant.

DAVIS, J., (after stating the facts).   The instructions of the Court to the jury are set out in the case stated on appeal, but as it is stated that no written instructions were asked and no exceptions were taken to those given, they are immaterial for the purpose of this appeal.

No courses and distances are mathematically given in the deeds under which either plaintiffs or defendant claim. Both claim under titles derived from Mills Roberts, and this action grows out of a controversy as to where the boundary between the tracts of land claimed by them respectively is.   On the trial much evidence was offered, many deeds were read in evidence and many witnesses were examined.

The first exception is to the exclusion of the testimony of Hughes to prove the declaration of Roberts, made at the time of the execution of the deed to Merrimon and Hughes, that "it did not convey the whole of Long Branch, but that he had reserved to himself one hundred acres of timber for the use of his Long-Lane farm."   The plaintiffs say that this evidence is relevant and competent, not to vary or change the boundary line in the deed, but to show where the true

boundary is, and that the location of the one hundred acres of timber land, alleged not to have been included in the deed from Roberts to Merrimon and Hughes, is consistent with the boundary as claimed by them, and inconsistent with the boundary as claimed by the defendant.

The defendant says that it is incompetent:

1. Because it is the declaration of a deceased grantor in his own interest.

2. Because it varies the terms of the deed.

3. Because it is excluded by section 590 of *The Code*.

The plaintiffs say the declaration is competent, and will aid the jury in determining where the boundary line is, and that it is a question for them. They must begin "on the sound, at a ditch in the Roberts-Benbury line." The plaintiffs say that this ditch is the ditch, at a point designated by them; the defendant says that it is the ditch, at the point designated by him.

In *Sasser* v. *Herring*, 3 Dev., 340, it is said that the "single declaration of a deceased individual, as to a line or corner," may be permitted to be proven, and have the weight of common reputation; but the declaration of the owner of the land, however ancient, cannot be used in behalf of those claiming under him, and counsel for the appellees insist that this well established rule will exclude the testimony of Hughes.

The defendant, as well as the plaintiffs, claims under Roberts, and Hughes, to whom the declaration was made, and through whom the defendant claims, was one of the persons to whom the deed was made, and to whom the declaration of Roberts was made, at the time of executing the deed. It was more than a simple declaration; it was an act, a fact, *pars rei gestæ*, upon which the parties acted.

Why should not the declaration of Roberts to Hughes, made at the time the deed was executed, indicating what was, and what was not conveyed, be competent? And why

is not Hughes, who accepted the deed, thereby, according to the declaration that it did not convey the one hundred acres of timber land, a competent witness to prove this fact, not for the purpose of varying or changing a known line, but for the purpose of throwing light upon the matter, and aiding the jury to determine where the controverted and unfixed line really is? · It was the declaration of a deceased grantor in his own interest; it was a declaration made at the time of the execution of the deed to a grantee, against whose interest it was, who accepted and acted upon it, and thereby recognized it as true, and he is one of the persons through whom the defendant claims, and is the witness by whom it is proposed to prove the declaration. It could subserve no purpose in the interest of Hughes, the grantee, and · being made to, and acted upon by him at the time, it became more than the mere declaration of Roberts, the grantor. It was an accepted *fact* by both parties, and we cannot see why Hughes, the grantee under whom the plaintiffs derive title, is not a competent witness to prove it. It was *against* his interest. *Halstead* v. *Mullen*, 93 N. C., 252; *Mason* v. *McCormack*, 85 N. C., 226.

The declaration was accepted by Hughes as lessening the area of the tract of land purchased, and was, to that extent, in disparagement of his rights, and is competent as *original* evidence. 1 Greenl. Ev., sec. 109.

Where the line is uncertain, the acts and admissions of adjoining proprietors are admissible. *Davidson* v. *Arledge*, 97 N. C., 172. Where there is no ambiguity in the description given in a deed, nothing short of running and marking a line, contemporaneously with the deed, can have the effect to vary the boundaries as called for in the deed. *Caraway* v. *Chancy*, 6 Jones, 361. But here the very question in dispute grows out of the ambiguity or uncertainty as to where the boundary line is.

Evidence to aid a defective description in a deed is not competent. *Kitchen* v. *Wilson,* 80 N. C., 191.

The evidence here is not offered to aid a defective description, but to aid the jury in determining where the beginning point and boundaries are. We think, that upon no one of the grounds insisted upon by the defendant, can the testimony of Hughes be excluded, and there was error in sustaining the objection.

As no question is made as to the title of Mills Roberts, we do not see the materiality of the deed from the Clerk and Master in Equity to him; but if the deed executed since the beginning of this action contains matter of description affecting the boundary, not warranted by the decree under which it was made, it would not be accepted as concluding the parties upon the question of boundary; but as there was error in sustaining the defendant's first objection, we need not consider this. There is error.

Error.                                    *Venire de novo.*