HILL v. DALTON.

(Filed November 15, 1905).

*Processioning—Burden of Proof — Deeds — Boundaries —
Natural Object—Course and Distance—Title—Location
of Grants—Evidence—Declarations as to Boundaries.*

1. In a proceeding under the "Processioning Act," chapter 22, Laws
   1893, to establish a disputed line, the burden of proof is upon
   the plaintiff.

2. Whenever a natural boundary is called for in a patent or deed, the
   line is to terminate at it, however wide of the course called for
   it may be, or however short or beyond the distance specified.

3. Whenever it can be proved that there was a line actually run by
   the surveyor, was marked and a corner made, the party claiming
   under the patent or deed shall hold accordingly, notwithstanding
   a mistaken description of the land.

4. In a processioning proceeding the plaintiff may not, where there is
   a call for course and distance and a natural object or line of
   another tract, stop at the end of the call for course and dis-
   tance, but must either show the location of the natural object or
   the line called for, or show that at the time his line was sur-
   veyed, a line was run and a corner marked corresponding with
   the call for course and. distance, or that there was never any
   such object or line, as called for.

5. The question of title. is not in issue in a proceeding for proces-
   sioning for establishing a disputed line.

6. In a processioning proceeding, where the question in controversy
   was the location of the R grant, and to do this it was necessary to
   locate the M grant, evidence to show that the latter was not
   properly located because it did not correspond with the former,
   was properly excluded, as the lines of the senior grant, the con-
   trolling object, cannot be established by the lines of the junior
   grant.

7. The declaration of a person deceased, at the time of the trial, in
   regard to a corner or line in controversy, is competent, provided
   the declarant had opportunity of knowing, had no interest in
   making the declaration at the time and that it was *ante litem
   motam.*

PROCEEDING by J. H. Hill against Thornton Dalton and others, brought before the Clerk of the Superior Court and heard upon appeal by *Judge Chas. M. Cooke* and a jury, at the March Term, 1905, of the Superior Court of FORSYTH. From a judgment for the defendants, the plaintiff appealed.

*Manly & Hendren* and *Watson & Buxton* for the plaintiff.
*Lindsay Patterson* for the defendants.

CONNOR, J.   This is a proceeding instituted pursuant to the provisions of chapter 48 of The Code, as amended by chapter 22, Laws 1893, commonly known as "The Processioning Act."   The case was before us on appeal at the Fall Term, 1904, reported in 136 N. C., 339.   The proceeding was conducted through its several statutory stages until it reached the Superior Court, and was then tried upon a single issue directed to the inquiry in respect to the true line of plaintiff's land.   It would be difficult to state the contentions upon which the exceptions to His Honor's rulings are based, without reference to the map which was in evidence.

Plaintiff introduced a grant to John Rights, bearing date January 14, 1795, describing a tract of 200 acres.   "Beginning at a pine, Jacob Blum's corner, east with his line 57 chains to a white oak in James McKaughan's line, south 35 chains and 9 links crossing two branches to pointers in said McKaughan's line, west 57 chains to a stake, north 35 chains, 9 links to the beginning."   Plaintiff introduced several deeds conveying said land, by the same description, until the title vested in A. D. McCumbie; he then showed mortgage deed from McCumbie to Belo, containing covenants of seizin, against encumbrances and general warranty; deed from Belo to plaintiff; all of said deeds containing same description. There was evidence, in respect to which there was no controversy, that the Rights grant began at the S. W. corner of the Jacob Blum grant located by the surveyor at a stone on the

map at A.   It was also shown that the 57 chains in the first
call gave out at B; that there was a small black gum at that
point.   Those defendants, claiming under the McKaughan
grant, introduced a grant to James McKaughan bearing date
November 9, 1784.   This grant covered 460 acres.   "Be-
ginning at a pine on the west side of the creek, running north
93 chains to a pine, east 49½ chains to a black oak, south
93 chains to a pine, then west to the beginning."   There was
evidence tending to show the location of the grant as ap-
pears on the map, W Q N M.   Plaintiff denied that the Mc-
Kaughan grant was correctly located.   There was evidence
tending to sustain plaintiff's contention in this respect.
Plaintiff insisted that he was not called upon to locate the
McKaughan grant, although called for by the Rights grant;
that as defendants claimed under the grant, the burden was
upon them to locate it; that if they failed to do so, he was
entitled to locate his land according to the course and dis-
tance, disregarding the objects called for.   If plaintiff is
correct in his contention, his true lines would be A, B, C, D,
thence to the beginning.   His Honor instructed the jury:
"That the burden was on the plaintiff to establish the true
boundary in dispute between the parties.   That as the grant
under which plaintiff claimed called from it beginning point
east 57 chains to McKaughan's line, the burden was on the
plaintiff to establish by a preponderance of the evidence the
true boundary line of the McKaughan grant."   The court
stated the same proposition in other forms and declined to
give an instruction asked by plaintiff, putting the burden
upon the defendant.   Plaintiff's exceptions present the ques-
tion whether there was error in the instruction given and in
refusing that asked.   Upon the former appeal this question
was not presented or argued.   We did not otherwise decide
it than to say: "As the plaintiff is the actor, it would seem
that the burden is on him to make good his contention."   As
the question is now fairly presented and has been argued, we

deem it proper to treat it as open and endeavor to lay down the rule for guidance in like cases in the future. In those cases which have been before this court involving the construction of the statute, we do not find any expression of opinion regarding the rule of practice in this respect. The proposition, that the party holding the affirmative of the issue carries the laboring oar, or has the burden of making good his allegation, is elementary. He meets this requirement by introducing testimony, which the court deems sufficient to take the case to the jury. He may, in certain cases, after the introduction of testimony, rely upon any presumption which the law raises and which becomes evidence from which, unless rebutted, he may call for a verdict. These principles are all of common knowledge and illustrated in practice by numerous cases in our reports. The only question is the extent and manner of their application to this unique proceeding with which we are dealing. In the absence of any authority, courts are compelled to resort to "the reason of the thing." It is impracticable, if not impossible, to try and determine controversies of fact without adopting some principle or rule for determining which of the parties shall first produce testimony, or, in the language of the books, "go forward." 1 Greenleaf, sec. 14; Thayer on Ev., 353. If no evidence has been produced, it is clear that the court would have instructed the jury to find the issue against the plaintiff, that is, that he had not established his line. It behooved him, if he would persuade the jury to find the fact to be as alleged, to introduce evidence. Therefore, in the ordinary acceptance of the term, and, as generally understood in practice, the burden of proof was upon him. We see no reason why the general rule should not apply in a proceeding instituted to establish a disputed line. The plaintiff says, conceding this to be true, he was only required to locate his land according to the calls in his grant; that he was entitled to have the lines called for in the absence of any evidence on the

part of the defendant, declared to be the true line. Upon this contention the enquiry arises, what is necessary for the plaintiff to show to locate his grant. He says, that having shown the beginning point to be at A, he may locate according to the calls by course and distance. This presents the question, what are the calls in the grant, and thus we reach the real question raised by His Honor's charge and the exception thereto. His Honor's opinion was that the controlling call in the first and second line is the McKaughan grant. In *Cherry v. Slade,* 7 N. C., 82, *Chief Justice Taylor* examined the cases decided prior to 1819 and carefully reviews them in an able and exhaustive opinion. He discusses the history and reasons upon which the court had proceeded in questions of boundary where there is a variance between the calls for course and distance and natural objects or lines of other tracts of land. Without undertaking to do more than refer to this "mine of learning," we find that the rules there announced have been uniformly followed by this court. "That whenever a natural boundary is called for in a patent or deed, the line is to terminate at it, however wide of the course called for it may be, or however short or beyond the distance specified. The course and distance may be incorrect from any one of the numerous causes likely to generate error on such a subject; but a natural object is fixed and permanent, and its being called for in the deed or patent, marks beyond controversy the intention of the party to select that land from the unappropriated mass." There is a second rule which makes an exception to the first. "Whenever it can be proved that there was a line actually run by the surveyor, was marked and a corner made, the party claiming under the patent or deed shall hold accordingly, notwithstanding a mistaken description of the land." The rule is stated in *Gilchrist v. McLaughlin,* 29 N. C., 310: "When another line is called for and distance gives out before reaching the line called for, the distance is to be disregarded." *Jefferson v. McGhee,* 34

N. C., 332. In *Corn v. McCrary*, 48 N. C., 496, it is said
that the line of another tract controls course and distance,
and it makes no difference whether such line be marked or un-
marked. *Nash v. R. Co.*, 67 N. C., 413; *Dickson v. Wilson*,
82 N. C., 487. When the plaintiff introduced the John
Rights grant it was incumbent upon him to locate it in
accordance with the controlling calls. When it appeared by
the evidence of the surveyor that at the end of an east line of
57 chains there was no white oak, or line of the McKaughan
grant, it behooved him to go further and show either
where the McKaughan line was or that the line relied on by
him was surveyed, marked, and the corner marked at the end
of the call. In the absence of any testimony in either respect
he had failed to locate his grant or establish his line, that
being the matter in controversy. This may not be true in
actions of a strictly adversary nature involving title. In such
cases the plaintiff is ordinarily required only to make out a
*prima facie* case, but here the plaintiff, actor, has undertaken
to establish the true location of his line. We are of the opin-
ion, in this proceeding, that he may not, where there is a call
for course and distance and a natural object or line of another
tract, stop at the end of the call for course and distance, but
must either show the location of the natural object or the line
called for, or show that at the time his line was surveyed a
line was run and a corner marked corresponding with the call
for course and distance, or that there was never any such object
or line, as called for. The question of title is not in issue in
this proceeding. We confine our ruling to a proceeding for
processioning for establishing a disputed line. The objective
and controlling point in the location of the Rights patent is
the white oak in the McKaughan grant, and until that is
ascertained, the plaintiff cannot ask the jury to find his true
line as he contends. The defendants having shown the Mc-
Kaughan grant and introduced evidence in regard to its loca-
tion, the inquiry was narrowed to the single question whether

such evidence was to be accepted by the jury as true.  In considering the evidence, it was necessary for the court to instruct them in respect to the burden of proof.  If they believed the defendant's evidence in this respect, the plaintiff could not further proceed but for the rule that they would disregard the course and distance, and carry his first call to the nearest point in the grant.  If they did not believe the evidence, the plaintiff had failed to locate his grant, and the jury would have been compelled to find that they could not locate his true line.  The same result would follow if the evidence was so balanced that they could not say how the matter was.  The law declares the McKaughan grant to be his boundary—the burden was upon him to show where it was.  We concur with His Honor's instruction.  The jury followed the call as far as possible, and then made such deflections as was necessary to carry them to the McKaughan grant.  An examination of the plats set out in several of the cases in our reports show a much more radical departure from the course and distance to reach the natural object or line called for. The jury reached the McKaughan grant at 6, and ran back to 5, in this way answering the second call along the McKaughan line, a line from B to C would not, according to the location of the McKaughan grant, have met this call.

The plaintiff proposed to ask the surveyor: "If the true location of the McKaughan grant is, as appears on the map, W Q M N, would the first call of the Rights grant—the beginning point being established at A—ever reach any line of the McKaughan grant?"  Upon objection the question was excluded.  The plaintiff stated that his purpose in asking the question was to show that the first line of the Rights grant, if extended, would not strike the line of the McKaughan grant anywhere, and therefore the McKaughan grant was not properly located.  This inquiry presents the question, in another aspect, passed upon in this case in the former appeal. The question in controversy was the location of the Rights

grant—to do this it was necessary to locate the McKaughan grant—the proposition was to show that the latter was not properly located because it did not correspond with the for-, mer. If permitted it would be to establish the lines of the senior grant, the controlling object, by the lines of a junior grant, the very object which was controlled by the senior. The fact that the course and distance called for in the junior grant did not reach the line of the senior grant, was no evidence of the location of the latter. This would be to reverse the rule by having the junior grant, the location of which is the matter in controversy, to control the location of the senior. For the reasons given, and upon the authority cited in the former opinion, we sustain His Honor's ruling.

Plaintiff testified that after he purchased, McCumbie pointed out the corner of the land. He was then asked, "What corners did he point out to you?" Objection by defendant sustained, and plaintiff excepted. McCumbie was dead at time of the trial. It is abundantly settled in this State that the declarations of a person deceased, at the time of the trial, in regard to a corner or line in controversy, is competent, provided the declarant had opportunity of knowing, had no interest in making the declaration at the time and that it was *ante litem motam.* In *Sasser v. Herring,* 14 N. C., 340, the rule is stated, and in *Yow v. Hamilton,* 136 N. C., 357, *Mr. Justice Walker* restates it in the light of all of the decisions of this court, which are cited and the language of several of them quoted and commented upon. It is need-less to do more than refer to that well considered opinion. That the admission of the declaration of a single person under the limitations prescribed is an exception to the general rule, is conceded. It is also said that the concession made by the court, in this respect, was largely due to the peculiar condition existing in the early settlement of our State. It would seem that the reason of the rule suggests that it should not be extended beyond its original scope. The plaintiff

did not bring himself within the well defined limitations upon which such declarations are admissible. There is nothing in the record to show or indicate whether the declaration if made was *ante litem motam.* Before the declaration in any aspect was admissible, the plaintiff should have brought it within the well defined limitations—in respect to time, interest, death and knowledge of the declarant. It is not clear that the declaration is not incompetent for another reason. There is no difficulty in saying, as a matter of law, *what* the boundaries of the Rights grant are. The only difficulty is in saying *where* they are. There is but one way in which the plaintiff can avoid the rule which carries his first line to the McKaughan grant, by showing that at the time the line was surveyed, it was marked and the corner marked. To show the declaration of a deceased owner otherwise competent as to the corners of the Rights land, would be but slight, if any, evidence of the McKaughan grant. *Caraway v. Chancy,* 51 N. C., 361; *Roberts v. Preston,* 100 N. C., 243. We have examined the record with care and find no error in His Honor's ruling. The judgment must be

Affirmed.