MOORE v. McCLAIN.

(Filed May 22, 1906).

*Ejectment—Trespass—Prima Facie Title—Burden of Proof —Boundaries—Natural Objects—Courses and Distances —Conflicting Calls.*

1.  In an action of ejectment and trespass, where the plaintiff alleged title and the defendant denied it, the burden of the *issue* was upon the plaintiff, and showing a *prima facie* title did not shift the burden of proof upon the issue, but imposed upon the defendant the duty of "going forward" with his evidence.

2.  When, in addition to course and distance, natural objects, marked trees or lines of other tracts are called for, in a grant or deed, these, when shown, will control course and distance, but the duty is not imposed upon those claiming under such a grant or deed to locate, or make reasonable search for, the natural objects before they can rely upon the calls for course and distance.

3. A finding that the defendant was not in possession of the *locus in quo* when suit was brought, would put an end to the plaintiff's action, if in ejectment only.

ACTION by Ellen O. Moore against Thomas McClain and others, heard by *Judge R. B. Peebles* and a jury, at the January Special Term, 1906, of the Superior Court of POLK.

Plaintiff sued in ejectment, alleging title to a tract of land described in the complaint by metes and bounds; that defendants were in the wrongful possession thereof. She also alleged that the land was heavily timbered and that the defendants were cutting and removing valuable timber therefrom, praying for an injunction restraining defendants, etc. A restraining order was issued and upon the return day continued to the hearing. Defendants denied each allegation of the complaint. Issues were submitted to the jury directed to the inquiry of title, possession and damages. Plaintiff introduced a grant from the State bearing date November 28, 1809, followed by a chain of title. She then introduced testimony tending to locate the boundaries of the grant; one Edwards testifying that beginning at A and running to B he found marks along the line, appeared to be 10 or 15 years old; passed a stone and pointers at B; found pointers at C and traced the line at the beginning. Plaintiff introduced one Joe Moore, who testified that he was 64 years old; was present when line was run; was about 17 years old. When they reached the stack corner, about 200 yards from the house, they sent witness to Daniel McClain's house after an axe and they cut into a tree and found marks in it. Witness saw the tree last year; some rocks there now; did not remember whether they put any down there or not. McClain's house was northwest from corner. John Matthews testified: That McClain wanted him to cut some boards when going east, and he told me not to cut anything on the right, that was Moore's land; twenty-five years ago. Plaintiff rested. Defendants introduced a grant to John

Hughes, bearing date February 26, 1793, calling for "beginning at a Spanish oak on a hill on the north side of Green River;" showed by the surveyor that he began at the Spanish oak at the point on the map marked 1, and run by course and distance to 2, thence to 3, thence to 4, and if the Spanish oak was at the beginning corner, the course and distance would include the land in dispute. He testified in regard to the marks on the Spanish oak and that the second corner called for in defendant's grant was for a pine; that he found no pine at the end of the distance which gave out in a field, but that 3 or 4 yards beyond he found a stump. The second call in the grant by course and distance carried him to 3; that the call was by course and distance "to a stake in his (Hughes') own line;" that he, the surveyor, knew of no line at 3; that he made no inquiries as to where the Hughes line was; did not attempt to find it, was not asked to look for it or locate it by either the plaintiff or defendant. George Lynch testified that he was 56 years old, was raised at Dan McClain's, on land inside of defendant's grant, as located by the surveyor; that he had known the Spanish oak corner, which he pointed out to the surveyor, since he was a boy, and that it had at all times been known and recognized by McClain and the adjoining owner of land as the McClain beginning corner of the Hughes grant. At the conclusion of the evidence the defendant's counsel asked the court in writing to charge the jury: "That there is no evidence as to the location of the Hughes line or tract of land at the time of the date of the John Hughes grant introduced by the defendant dated in 1793, and therefore, the call in said grant cannot control course and distance." This prayer was refused by the court and defendant excepted. The court then charged the jury, that if they were satisfied that the plaintiff had located the calls of her grant and had been in possession of said boundary, as testified to by the witnesses, it would be their duty to answer the first issue "yes," unless they found

from the evidence that the defendants had located the John Hughes grant as claimed by them, and as indicated on the map, and that in passing upon the location of the Hughes grant they should take into consideration and be governed by the natural boundaries called for. That if they found the beginning to be at the Spanish oak, the next corner would be a pine, and if they could find a pine from the evidence they would go to it regardless of course and distance. The next call in the grant was course and distance, which would carry them to 3, if not controlled by natural boundaries; but, as the call from 2 to 3 was south to a stake in his, the grantee's own line, his line when located would control course and distance, and that the surveyor had testified that he had made no effort to find the Hughes line called for in the grant, and that no effort so far as he knew had been made to locate it. His Honor charged the jury that as the defendant's paper called for the Hughes line it was the defendant's duty to make reasonable efforts to find it, and charged the jury that the burden was upon the defendant to locate the Hughes line, before he could establish the boundary by course and distance. The defendant excepted. After the jury had retired, His Honor informed counsel that he was of the opinion that there was no evidence to support the allegation that the defendant was in possession when the suit was brought and that he would charge the jury to answer the second issue "no." Counsel for both parties consented thereto. The jury found the first issue for the plaintiff, second issue by consent "no." That the defendant had trespassed upon the land and assessed the plaintiff's damages at $40. Thereupon His Honor rendered judgment that the plaintiff was the owner and entitled to the possession of the land, a full description whereof is set out in the judgment, and that she recover of the defendants and their surety upon their defense bond the sum of $40 and costs, to all of which the defendant duly excepted and appealed, assigning as errors: The refusal

of the court to give the first instruction asked. The instruction that the burden was upon the defendant to show where the Hughes line was and to make reasonable effort to find same, before he could rely upon the course and distance to fix the boundary of his grant. In permitting the plaintiff to recover the land described in the complaint after it had been found by the jury that the defendant was not in possession of the land in dispute when the action was brought.

The defendant appealed from the judgment rendered.

*Gallert & Carson* for the plaintiff.
*Smith & Schenck* for the defendant.

Connor, J., after stating the case: The plaintiff introduced testimony tending to show the location of the Alexander grant of November 29, 1809, within the boundaries set out in the complaint. She does not connect herself with this grant, but shows a chain of title beginning February 10, 1834, with which she does connect herself, showing possession, etc. The defendants, for the purpose of showing title out of the State, at the date of the Alexander grant, introduced a grant to John Hughes, dated February 26, 1793, which they undertook to locate. This grant called for a Spanish oak as the beginning corner. There was evidence tending to show the location of this oak. The surveyor testified that it was marked as a corner. The first call from this oak was by course and distance to a pine; the second call was by course and distance to "a stake in his (Hughes) line." The surveyor testified that the course and distance, called for, carried him to a point marked "2" on the plat; he found no pine there, found a stump three or four feet away. The second call by course and distance carried him to "3;" he made no inquiries as to the Hughes line, made no attempt to find it, nor was he asked to do so by either party. He testified that following the call he reached "4," thence to the begin-

MOORE *v.* McCLAIN.

ning. If this testimony is true, the Hughes grant covers a portion of the Alexander grant and shows title out of the State at the date thereof.

So far as the controversy is presented upon this appeal and the exceptions to His Honor's ruling, the sole question is as to the manner in which the defendants may locate the Hughes grant. The plaintiff having shown a *prima facie* title, it behooved the defendants to show a superior title. The burden of proof upon the *issue* was upon the plaintiff. She alleged title and the defendants denied it. Showing a *prima facie* title did not shift the burden of proof upon the issue, but imposed upon the defendants the duty of "going forward" with their evidence. The distinction is clear and well illustrated in *Meredith v. Railroad,* 137 N. C., 478, and *Board of Education v. Makely,* 139 N. C., 31. When the defendants introduced the Hughes grant, they undertook to show that it covered a portion of the *locus in quo.* It became necessary for them to show the beginning—this being a natural object. After doing so and it appearing that the calls were for course and distance and natural objects, it is too well settled to admit of controversy that if there was a discrepancy in the calls, that which was most certain, which is the natural object, would control. The judge so instructed the jury, and he further imposed upon the defendants the duty of making reasonable search for the natural objects before they could rely upon the calls for course and distance. To this ruling the defendants excepted, and this is the point for determination.

*Ruffin, C. J.,* in *Harry v. Graham,* 18 N. C., 76 discussing this question, says: "There is but one principle applicable to questions of this sort. If there be but one description in the deed, that is to be strictly adhered to. If there be more than one and they turn out upon evidence not to agree, that is to be adopted which is the most certain. Course and distance from a given point is a certain description in itself,

and, therefore, is never departed from unless there be something else which proves that the course and distance stated in the deed was thus stated by mistake. It has been held that a tree called for and found not corresponding to the course and distance, establishes the mistake, and is itself the terminus. So of the line of another tract. But if the tree be not found, nor its former situation identified, it is the same as if the call for it had been omitted, for there is no sign but the course and distance. Such is the case here, no tree being found, nor its locality proved otherwise than it is shown by the deed to have stood at the end of a line of a certain length. The description is, therefore, the same as if the call had been for a stake or an imaginary point at the end of a distance." The rule is laid down by *MacRae, J.,* and approved in *Redmond v. Stepp,* 100 N. C., 212: "If only course and distance are given and the beginning is found, the land will be run by course and distance. But when in addition to course and distance, natural objects, marked trees or lines of other tracts are called for, these, when shown, will control course and distance and must be reached by a further extension or shortening of the line so as to reach such objects, trees or adjoining tracts. If none such can be found, then the course and distance must be the guide in fixing the boundary." This is the correct view and has, in actions of ejectment and trespass, been so recognized. It would impose upon those claiming, as in this case, under old grants, a heavy burden to require them to find or make search for natural objects or very old lines, before they could make at least a *prima facie* location of such grants.

The plaintiff contends that there was evidence tending to show that, in truth, the Hughes grant did not cover any part of the Alexander grant. If this is correct, such evidence should have been considered by the jury. The record does not profess to set out the language used by the judge, but says that in effect, he charged the jury that "the burden was

upon the defendants to locate the Hughes line, before they could establish the boundary by course and distance." This may not correctly express His Honor's views or instruction, but we must take it as we find it in the record. We think that the instruction was erroneous. It not appearing from the survey that there was any discrepancy in the calls of the grant, the call for course and distance would control. If there was evidence, as contended by the plaintiff, the question should have gone to the jury under proper instructions. The plaintiff's counsel cites in support of the instruction *Hill v. Dalton,* 140 N. C., 9. That case gave us much anxious concern. The question was presented, in regard to the burden of proof, in a proceeding under the processioning act, for the first time. As we then said, the plaintiff was the actor; he set forth his line and insisted that it should be so declared and established; he therefore carried the burden of proof on the issue. The grant contained three calls—course and distance, a white oak in Jas. McKaughan's line. The survey by course and distance did not show any white oak or other line. Evidence was introduced by the defendant locating the McKaughan line. The sole question was, where in this condition of the evidence, the burden of proof lay. Apprehending the difficulty which might arise, if the principle then announced was not restricted to the single case of a processioning proceeding, which is anomalous and always perplexing, we said: "We confine our ruling to a proceeding for procession for establishing a disputed line." We certainly did not intend to introduce a new rule of practice into the trial of other cases. We are impressed with the wisdom of adhering to well settled rules affecting the title to real estate. It is to be regretted that the evidence and language of His Honor's instructions were not sent up. We could more clearly see the bearing of the instructions upon the real merits.

We are of the opinion that His Honor fell into error in holding that the defendants must locate the Hughes line

MOORE *v.* McCLAIN.

before they could establish the boundary of the grant by course and distance. We can see no reason why, upon the introduction of the grant and the survey, they may not have gone to the jury. Of course the plaintiff was in no sense bound by the defendant's evidence. She may have insisted and asked the jury to find that the survey did not correctly locate the grant. It was their province to decide the question of fact, where the two lines were. His Honor instructed the jury to find that the defendants were not in possession of the *locus in quo* when the suit was brought. This put an end to the plaintiff's action, if in ejectment only. His Honor was of the opinion that the complaint set forth facts sufficient to constitute a cause of action for trespass, and proceeded to judgment accordingly. While complications may grow out of this course of procedure, and the effect of such judgments, as estoppels, be doubtful, we cannot see that any harm came to the defendants in this case. The exception is not pressed in the brief.

As the cause goes back for a new trial, the pleadings may be so amended as to present the issue as for a trespass, if they do not in their present form do so.

The plaintiff says that no harm came to the defendants by reason of His Honor's ruling, because they did not connect themselves with the Hughes grant. The evidence in that respect is not set out, if there was any. The record indicates that the parties desired to present the single question raised by the exception. It may be that the merits of the controversy depended upon proof of possession ousting the owner of the paper title. However all of this may be, for the error pointed out there must be a

New Trial.