**LELA FRUEAN of Pago Pago, Plaintiff**

**v.**

**MAGEO of Pago Pago, Defendant**

No. 21-1950

High Court of American Samoa

Civil Jurisdiction, Trial Division

[Land: "Vaitafe" in Pago Pago]

December 5, 1950

A. A. MORROW, *Chief Justice;* LETULIGASENOA, *District Judge.*

## DECISION

Heard at Fagatogo November 10 and 13, 1950.
Solosolo for Lela Fruean; Meuta for Mageo.

MORROW, *Chief Justice.*

Lela Fruean, also known as Leila, filed her petition in the High Court to have the title to the land Vaitafe quieted in herself as trustee. This land was conveyed to her as trustee by deed dated April 28, 1910 and recorded, together with an accompanying survey thereof, in Vol. I, Register of Miscellaneous at pages 229–230. Her claim is that while she is in possession Mageo Maaele is asserting that part of the conveyed land is Mageo communal family land and that

592

Mageo family members are trespassing upon it. The grantors in the deed were Mageo and Vaivao.

■ The deed, and its validity is not disputed, conveys the property described therein to Leila as trustee "in fee simple, to the joint use of the said issue of the marriage of the said Leila and the said August Fruean during their respective lives, without impeachment of waste, with the remainder to the use of the heirs of the said issue of the said marriage of Leila and the said August Fruean, or the survivor or survivors of them." The grantors were Vaivao and Mageo. August Fruean the husband of Leila is now deceased. He was half Samoan and half palagi. Leila has a very small amount of palagi blood, the remainder being Polynesian. Since at the time of the conveyance a person could not inherit land in American Samoa, freehold land excepted, unless he had at least three fourths Samoan blood in his veins, it was necessary that any conveyance benefiting the children of August and Leila be in trust for their use. The law in 1910 permitted such a conveyance. The description in the deed of the land conveyed is as follows:

"Beginning at a point near the road to Fagasa on a range of N. 89° E. with the northern corner of the house of Emil Foster; thence S. 43° E. distance 161 ft. *to a creek of running water* (emphasis ours); thence *along said creek* (emphasis ours) S. 60° W. distance 297 ft.; then S. 0° distance 99 ft.; thence S. 79° W. distance 122 ft.; thence N. 0° distance 78 ft.; thence N. 29° E. distance 100 ft.; thence N. 47° E. distance 100 ft.; thence N. 69° E. distance 96 ft.; thence N. 37° E. distance 80 ft. to starting point; containing one and two tenths (1.2) acres more or less as shown by the plan attached hereto."

The land conveyed was a part of a larger tract, the grantors retaining the part lying on the other side of the "creek of running water." The difficulty arises over where the "creek of running water" was located when the deed

was made. Leila has recently erected a palagi house on the side of the tract furthest away from Fagasa road. She asserts that the house is within the land conveyed by the deed. Mageo claims that it is outside such land; that it is located on Mageo property retained by Mageo and Vaivao when the deed was made. Mageo says that in 1910 the creek referred to in the deed ran a few feet in front of the present location of the house. Leila claims that the creek then ran a few feet back of it. The court viewed the land in the presence of the parties and their counsel both before and after the formal hearing. There is an old stream bed back of the house. Also there is a stream bed some eight or ten feet in front of the house. Presently the stream runs roughly one hundred feet in front of the house. The evidence leaves no doubt that the stream has changed its course a number of times since the deed was made and that such changes were sudden and not gradual.

In view of the evidence that the changes were sudden there was no change of title to any part of the conveyed property because of the change in the course of the stream. The rules "to the effect that the ownership follows, or is presumed to follow, changes in the location of the water, do not apply in the case of sudden and perceptible changes, and such changes, whether the land encroaches on the water or the water encroaches on the land, effect no change in the ownership of the locus in quo. And so, if the middle line of a stream is the boundary line between two owners, the boundary line remains the same, although, owing to a sudden change in the location of the stream, that line ceases to be the middle line of the stream." 4 Tiffany on Real Property (3rd ed.) Sec. 1222. The legal effect of the deed which grants "to a creek of running water; thence along said creek, etc." was to convey to the thread of the stream. "Thus, descriptions of a boundary line running 'to the river and thence up the river', 'to the river and thence

up and along the river' to a beginning monument on the bank of the river, or even 'thence on the river shore' carry title to, and fix the boundaries of, the grantee's at the thread of the stream." 8 Am.Jur., Tit. Boundaries, Sec. 25.

Before this action was instituted Leila at the instance of Mageo employed John Hall, a licensed surveyor, to retrace the recorded survey on the ground. He began the retracing and when it became apparent that it would show that the boundary was as claimed by Leila, Meauta, representing Mageo, made so much objection to the continuance of the retracing that John did not finish it. Meauta claimed, since the house of Emil Foster referred to in the deed was no longer in existence, that Hall got the starting point wrong and that the length of the first boundary in the deed, viz. 161 feet from the starting point would put the second boundary reading "along said creek S. 60° W. distance 297 ft." in front of Leila's palagi house and not behind it.

We can decide this case correctly without determining whether Hall got the starting point right or not. Under the law the boundary was the thread of the "creek of running water" as it existed at the time the deed was made. If there was any inconsistency between the call for a distance of 161 feet and the call for "a creek of running water," the creek of running water being a natural monument prevailed. "No rule in real estate law is more inflexible than that monuments control course and distance, a rule that we have frequent occasion to apply in the case of public surveys, where its propriety, justice and necessity are never questioned." Cooley, J. in *Diehl v. Zanger*, 39 Mich. 601, 605. "The actual monuments with reference to which a conveyance is made will control a description . . ." McLain, J. in *Dows Real Estate and Trust Co. v. Emerson*, 125 Iowa 86, 99 N.W. 724, 725. If there is an inconsistency between description by courses and distances and by monuments, monuments govern. *Hedge v. Sims*, 29 Ind.

574; *Simonton v. Thompson*, 55 Ind. 87; *Pitcher v. Dove*, 99 Ind. 175; *Cashman v. Bean*, 226 Mass. 198, 115 N.E. 574; *Mayer v. Pockros*, 18 Ohio App. 506. Referring to the rule that natural monuments prevail over distances in a deed the editors of Corpus Juris say that "The reason for the rule is obvious and consists in the greater certainty which natural monuments afford." 9 Corpus Juris 214. "The reason of this rule is that it is the intention of the grant, to convey the land actually surveyed, and mistakes in courses or distances are more probable and more frequent, than in marked trees, mountains, rivers or other natural objects, capable of being clearly designated and accurately described." Marshall Chief Justice speaking for the Supreme Court of the United States in *McIver v. Walker*, 9 Cranch (U.S.) 173, 178, 3 L.ed. 694. "The course and distance may be incorrect from any one of the numerous causes likely to generate error on such a subject; but a natural object is fixed and permanent, and its being called for in the deed or patent, marks beyond controversy the intention of the party to select that land from the unappropriated mass." *Hill v. Dalton*, 140 N.C. 9, 52 S.E. 273.

It is clear under the foregoing rules that the boundary was the thread of the stream as it existed at the time of the conveyance regardless of whether the distance from the starting point to "the creek of running water" was 161 feet as stated in the deed; and also regardless of whether surveyor Hall located the starting point correctly when he began the retracing. The law presumes that the grantors in the deed intended to convey to the stream since they described the second monument as "a creek of running water" and the third course as running "thence along said creek."

■ Leila was a young woman of 20 when the deed was made in 1910 and was familiar with the property con-

veyed. She testified that the creek then ran back of where the house now is. Teo, age 73, also familiar with the property in 1910 testified "the big river used to run in the direction back of the house but nowadays it is going in the side toward the road." Lago, age 63, and familiar with the property in 1910, testified that forty years ago "the whole stream" ran behind the place where Leila's house now stands. There was some testimony to the effect that when the deed was made the stream ran in front of the house. The weight of the evidence clearly preponderates in favor of the view that the stream ran behind the house when the deed was made and we are fortified in this conclusion by the circumstance that an old stream bed is apparent on the ground behind the house. "It is elementary that in civil cases a mere preponderance of the proof is all that is necessary to establish the point in issue . . ." I Jones on Evidence (4th Ed.) 6. We hold that the boundary in dispute is the thread of the old stream as shown by the old stream-bed back of where the house now stands.

Leila testified that she and her children and persons occupying the land by her authority had had plantations up to the old creek-bed back of the house for forty years. We believe that testimony. She also testified that no Mageo had disputed her title for 39 years. The first Mageo to dispute her title was the present Mageo (Maaele) after he was awarded his matai title in 1949. It is true that during a large part of the above 39 years Leila resided in Upolu and did not have actual physical possession of the disputed part. However, while she was away actual physical possession was had by those who occupied the land by her permission. Under these circumstances she is entitled to tack their possession to hers in order to make up the 20 year period required for the acquisition of ownership of land by adverse possession. See 2 C.J.S., Tit. Adverse Possession, Sec. 128 where it is stated that "It is an almost universally ac-

cepted rule, although of course subordinate to the particular statute upon which a claimant relies to establish his title, that the establishment of title by adverse possession does not necessitate the possession of the land continuously by only one person, for a rule of tacking applies whereby the possession of successive occupants may, under proper circumstances, be joined together to make out the full statutory period if, as will be seen in Sec. 129 there is privity between the adverse possessors." There was the necessary privity here since those in actual possession when Leila was away held their possession pursuant to her permission and in subordination to her ownership as trustee. Under these circumstances if Leila had had no deed at all she would have become the owner of the disputed tract through adverse possession since her possession and those claiming under her was actual, open, hostile, exclusive, continuous, and under a claim of title for more than 20 years. *Maxwell Land Grant Co. v. Dawson,* 151 U.S. 586, 607; *Vaimaona v. Mulitauaopele S.,* No. 57-1948 (Am. Samoa); *Puailoa v. Leapaga,* No. 64-1948 (Am. Samoa).

■ The evidence shows that from 1910 to 1949 the Mageos recognized the bed of the old stream behind Leila's house as the true dividing line between Leila and themselves as also did Leila who, with those in possession under her, planted up to it. Under these circumstances if there was any defect in Leila's title, such defect was extinguished through aquiescence. "It has been frequently decided that though there is no express agreement as to the location of the boundary line, adjoining proprietors cannot question a line which they have, for a considerable number of years, recognized as the correct line between their properties. Some of the cases base this doctrine upon the theory that such recognition of or 'acquiescence' in a certain line is conclusive of the existence of an agreement, while others seem rather to regard it as an independent

rule of law, dictated by general considerations of justice and expediency, in order that uncertainty and disturbance of boundaries be avoided, and that mutual mistake does not affect the application of the doctrine of acquiescence." 2 Tiffany on Real Property (3rd ed.) Sec. 654. The doctrine of establishing a boundary by acquiescence of adjoining land owners over a period of years was approved in *Davis v. Angerman*, 195 Iowa 180, 192 N.W. 129; *Williams v. Tschantz*, 88 Iowa 126, 55 N.W. 202; *Jones v. Dosey*, 224 Mich. 351, 195 N.W. 129; *Clayton v. Feig*, 179 Ill. 534, 52 N.E. 149; *Picket v. Nelson*, 71 Wisc. 542, 79 Wisc. 9.

We hold that in the light of the evidence adduced at the hearing and our observations as to the old stream-bed back of Leila's present house that the true boundary between Leila and the Mageo is the thread of such old stream and we furthermore hold that the deed of April 28, 1910 from Mageo and Vaivao to Leila as trustee conveyed to her as such trustee to the thread of the running creek as it was at the time of the conveyance and that at such time the creek ran back of the location of Leila's present palagi house.

Accordingly it is ORDERED, ADJUDGED and DE-CREED that Leila was at the time of the commencement of this action and now is the owner, as trustee in fee simple absolute of the land described in the deed from Mageo and Vaivao to her as trustee dated April 28, 1910 and recorded in Vol. I, Register of Miscellaneous at pages 229–230, and that the true boundary line between the land of the Mageo adjoining such land is the thread of the old stream-bed back of Leila's present palagi house on such land.

Costs in the amount of $50.00 are hereby assessed against Mageo, the same to be paid within thirty days.